[Crim. No. 24068. Second Dist., Div. Two. May 28, 1974.]

In re JOHN WESLEY CLUTCHETTE on Habeas Corpus.

562

## COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, and William E. James, Assistant Attorney General, Frederick R. Millar, Jr., Russell Iungerich, Deputy Attorneys General, for Appellant.

Leo Branton, Jr., for Respondent.

**OPINION**

**COMPTON, J.**—The Attorney General appeals from an order of the Los Angeles Superior Court granting a petition for habeas corpus and directing the Adult Authority to discharge petitioner John Wesley Clutchette from the custody of the Department of Corrections.

On September 27, 1966, petitioner was sentenced to state prison following his conviction of the crime of burglary in the second degree. That crime is punishable by imprisonment from one to fifteen years (Pen. Code, § 461.) Petitioner's term began to run on October 4, 1966, the date of his reception by the Department of Corrections (Pen. Code, § 2900).

On December 10, 1969, petitioner's term was fixed by the California Adult Authority at six and one-half years. He was tentatively scheduled to be paroled April 20, 1970, however, on February 16, 1970, petitioner was indicted in Monterey County for the crime of murder and violation of Penal Code section 4501 (aggravated assault by prisoner serving less than life).

On March 12, 1970, the Adult Authority rescinded its action of December 10, 1969, leaving petitioner in the status of a prisoner without a fixed term and without a scheduled parole date.

Subsequently, on March 27, 1972, petitioner was acquitted on the Monterey County indictment, following which petitioner's term was, on May 10, 1972, fixed by the Adult Authority at 10 years with a parole date of November 13, 1972, and an expiration date of October 4, 1976.

On June 28, 1973, petitioner was suspected of violation of parole and was placed in custody in the Los Angeles County jail. Revocation proceedings were commenced. On July 16, 1973, petitioner filed this proceeding in habeas corpus contending that his original six and one-half-year term had expired in 1973 prior to his arrest for parole violation. According to petitioner his right to have his term fixed at 6½ years from October 4, 1966, became vested and the subsequent refixing of the term at 10 years was a nullity. He makes no attack on the present proposed revocation proceedings either as to substance or procedure, he simply argues that his term has expired and therefore the Adult Authority has no jurisdiction over him.

The indeterminate sentence law in California, which has been described as one of the most enlightened and progressive approaches to penology and prisoner rehabilitation, vests in the administrative board known as the Adult Authority the jurisdiction to set the term of imprisonment of an individual committed to state prison at any length of time within the statu-

torily prescribed minimum and maximum sentence for a particular offense. (Pen. Code, § 3020.)

Additionally, the Adult Authority exercises the separate and distinct power of granting parole. (Pen. Code, § 3040.) The two functions, i.e., term fixing and parole granting, while separate in concept are actually closely interrelated and are exercised in combination to best achieve the rehabilitation of the prisoner and the protection of the public. When the Adult Authority fixes a term and grants a parole it simply determines that the goal of public safety and prisoner rehabilitation will be best accomplished by a certain period of close confinement in the institution and a certain period of supervision outside of the institution.

█ Since the whole theory underlying the indeterminate sentence law is that a board of experts with an on-going evaluation capability is best able to determine public and prisoner needs, that board must have wide discretion in determining the ratio between close confinement and liberty on parole. (*Azeria* v. *California Adult Authority,* 193 Cal.App.2d 1 [13 Cal.Rptr. 839].) Hence the Legislature vested the Adult Authority with power to not only *determine* what length of time a person shall be imprisoned (whether in an institution or out of an institution on parole) but to *redetermine* that time as indicated, limited only by the statutory maximum term. (Pen. Code, § 3020.)

In the case at bar the original action of the Adult Authority had the effect of providing that petitioner would be under parole supervision for a period of approximately three years after release from the institution. When the Adult Authority later refixed petitioner's term that action had the effect of providing that he would be under parole supervision for a period of about three years and ten months. The increase in petitioner's institutionalization was attributal to the more than two years required. in litigating the Monterey County charges.

█ The first question to be answered is was the Adult Authority acting within its authority when it rescinded its previous action of fixing the term and setting a parole date?

We need not here concern ourselves with the procedural aspects of the board's actions in light of *In re Prewitt,* 8 Cal.3d 470 [105 Cal.Rptr. 318, 503 P.2d 1326], which held that the requirements of *Morrissey* v. *Brewer,* 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593], were applicable to rescission of parole grants after June 29, 1972. Both the action of March 12, 1970, and May 10, 1972, antedate that holding.

The order of the Adult Authority clearly shows that the rescission action

was based upon the fact that there were murder charges pending against petitioner and that petitioner was advised of the action. We think it important to point out that at the time of rescission petitioner had not been released on parole but had only a tentative parole date. Thus we are not dealing with revocation of parole. ■ While *In re Prewitt, supra,* declared that as far as procedural due process is concerned a rescission of an expected parole date is on a par with revocation of parole, it did not undertake to prescribe limitations on the board's authority to rescind. Implicit, however, in the rule requiring procedural due process for rescission is the notion that the prisoner must have an opportunity to respond to the matters upon which the authority is basing its action. This in turn implies the need for the existence of reasonable grounds for rescission. Penal Code section 3063 provides: "No parole shall be suspended or revoked without cause, which cause must be stated in the order suspending or revoking the parole." While there may well be a difference in the kind of considerations which will provide "good cause" for rescission and "good cause" for revocation we need not concern ourselves with that distinction here. ■ Petitioner concedes, as he must, that the fact that he had been indicted and was facing a trial for a murder committed in the institution, was "good cause" to rescind his parole date. Petitioner contends that the rescission should have amounted only to a "suspension" of the parole date but the result is the same. The original tentative date was vacated and no new one set until after termination of the trial in Monterey County.

Since the length of a prisoner's sentence directly affects the length of the term of parole and since a period of parole supervision is an integral part of the rehabilitation process, it was well within the prerogative of the Adult Authority to rescind the fixing of the sentence as well as the setting of the parole date. The authority to "redetermine" a sentence as set out in Penal Code section 3020 includes the authority to rescind a previous determination.

Thus, the Adult Authority's action of March 12, 1970 rescinding its previous action was proper and for "good cause." At that point, then, petitioner's sentence was a maximum of 15 years unless reduced by further action of the Adult Authority. (*In re Quinn,* 25 Cal.2d 799 [154 P.2d 875]; *People* v. *McNabb,* 3 Cal.2d 441 [45 P.2d 334].)

The next question is whether the Adult Authority, at the time it considered petitioner's case on May 10, 1972, was bound to simply reinstate its previous order fixing the term at six and one-half years. We think not.

The later hearing was in effect "de novo" because, as noted, petitioner's

status was that of an unsentenced prisoner with a 15-year maximum term. (*In re Quinn, supra; People* v. *McNabb, supra.*) Additionally, the correctional personnel had had an opportunity to observe petitioner's conduct during the interim period. To reset petitioner's sentence at 6½ years from October 1966, and then parole him would have resulted in his being under parole supervision for at most 10 or 11 months.

The minutes and files of the Adult Authority disclose that at the May 10, 1972, hearing, that body sitting en banc considered petitioner's entire behavior picture. It was observed that petitioner "walled himself off from almost all, including staff. He is an aggressive individual." The questions were posed "Can he control himself? Can he be controlled on the outside?" The record discloses a conscientious performance by the board of its mandated responsibility in dealing with a prisoner for which only 10 or 11 months of parole supervision could reasonably be considered inadequate for proper rehabilitation. There is a presumption that a certification of the Adult Authority correctly states the action taken and that good cause therefor exists. (*People* v. *Dorado,* 62 Cal.2d 338, 360 [42 Cal.Rptr. 169, 398 P.2d 361].) Petitioner offers nothing to counter that presumption.

"It is fundamental to the indeterminate sentence law that every such sentence is for the maximum unless and until the Authority acts to fix a shorter term. . . . The principle of law is . . . the same whether we are dealing with a maximum term of life or a maximum term of years." (*In re Mills,* 55 Cal.2d 646 at pp. 653-654 [12 Cal.Rptr. 483, 361 P.2d 15].) When the board reduced petitioner's sentence from 15 to 10 years, it properly exercised its discretion notwithstanding the fact that petitioner contends it should have been further reduced.

The recent case of *In re Lynch,* 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921], contains language clearly dispositive of defendant's contention. There it is stated at page 417: ". . . the Adult Authority may, for good cause [citation] and at any time prior to a defendant's final discharge, extend a previously fixed lesser term by refixing it at any period up to and including the statutory maximum. Stated otherwise, a defendant under an indeterminate sentence has 'no vested right' to have his sentence fixed at the term first prescribed by the Adult Authority 'or any other period less than the maximum sentence provided by statute.' (*In re Cowen* (1946) 27 Cal.2d 637, 641 [166 P.2d 279].)"

The order is reversed and the superior court is directed to enter an order denying the petition for habeas corpus.

Roth, P. J., concurred.

**FLEMING, J.**—Dissenting in part.

I agree with the reversal of the order discharging petitioner, but instead of dismissing the petition for habeas corpus I would direct the superior court to determine whether good cause existed for the imposition of the 10-year sentence on 10 May 1972. My disagreement with the majority stems from a somewhat different view of the authority exercisable by the Adult Authority in relation to the following sequence of events:

December 1969—Petitioner's term of sentence determined at six and one-half years.

February 1970 — Petitioner indicted in Monterey County for murder of a correctional officer.

March 1970 — Petitioner's term of sentence vacated.

March 1972 — Petitioner acquitted on the Monterey murder charge.

10 May 1972 — Petitioner's term of sentence redetermined at 10 years.

The Adult Authority has the right to redetermine sentence and, if thought necessary, to increase the term of a prisoner whose term it has previously determined. (Pen. Code, § 3020.) But in doing this the authority does not write afresh in disregard of what has gone before, for its power to increase the term of sentence is limited by the requirement that good cause for the increase be shown. This requirement was first articulated by *In re McLain,* 55 Cal.2d 78, 87 [9 Cal.Rptr. 824, 357 P.2d 1080], where the court said: "As already pointed out, insofar as the order redetermined sentence there is no statutory requirement that it state the 'cause' for such redetermination. *But, obviously, good cause must in fact exist for the making of such an order.* Even though a legally convicted person has no vested right to the determination of his sentence at less than maximum, his liberty, or denial thereof, may not be made to turn upon mere whim, caprice, or rumor. [Citations.] Thus in redetermining sentence, although no 'cause' need be stated in the order, the conclusion is inescapable that such action cannot be taken in the absence of good cause. In the instant case such 'cause' is disclosed both in the order, and in the record upon which the Authority acted." (Italics added.)

Under the law as it existed prior to *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593] and *In re Prewitt* (1972) 8 Cal.3d 470 [105 Cal.Rptr. 318, 503 P.2d 1326], neither notice and hearing nor articulation and statement of cause were necessary for a redetermination which increased the term of the sentence. (*In re McLain, supra,* pp. 85, 87.) But the presence of good cause in fact was required to sup-

port such an order. If good cause is not evident from the redetermination order itself, the detaining authority can be required by habeas corpus to justify the detention.

At bench, the Monterey murder indictment could not of itself operate as good cause to increase the term of petitioner's sentence, for the subsequent judgment of acquittal erased the blot of the indictment, even though the acquittal might have been based upon nothing more than failure to prove petitioner's guilt beyond a reasonable doubt and even though the facts and circumstances which brought about the indictment might in themselves furnish good cause for an increase in the term of sentence. (*People* v. *Robart,* 29 Cal.App.3d 891 [106 Cal.Rptr. 51]; *People* v. *Hayko,* 7 Cal.App.3d 604 [86 Cal.Rptr. 726].) Petitioner's acquittal, without more, should have resulted in reimposition of his original term of sentence, unless good cause for imposition of a longer sentence was established by events that occurred between the time of petitioner's original sentence (December 1969) and its redetermination (10 May 1972).

The majority opinion appears to suggest that in this case a showing of good cause for an increased term of sentence was unnecessary because the initial sentence visualized three years of parole time and petitioner's redetermined sentence merely reaffirmed and reimposed a parole period of three years. In my view the parole-time argument possesses no validity, for I think it obvious that petitioner had already served two years of his "parole time" in the penitentiary while awaiting disposition of the murder charge on which he was ultimately acquitted.

The other argument relied upon by the majority adopts the premise that the original sentence, the vacation of sentence, and the subsequent redetermination of sentence are separate happenings that bear no relationship to one another. But we are dealing here with matters that directly involve the moral sense of the criminal law and its basic technique for differentiating right from wrong. To rule that acquittal, without more, can result in an increased term of sentence is to repay past insult with future injury. Both at law and in common understanding sentence and resentence involve a unitary process, a conclusion that clearly appears from those decisions which prevent the courts themselves from imposing an increased sentence without good cause after reversal of an earlier conviction. (*People* v. *Henderson,* 60 Cal.2d 482, 497 [35 Cal.Rptr. 77, 386 P.2d 677]; *People* v. *Thornton,* 14 Cal.App.3d 324, 326-327 [92 Cal.Rptr. 327]; *North Carolina* v. *Pearce,* 395 U.S. 711, 725-726 [23 L.Ed.2d 656, 669-670, 89 S.Ct. 2072].) The uncontrolled exercise of power denied the courts because of due process of law is equally impermissible to the Adult Authority.

However, the record does suggest the existence of good cause in fact for an increase in petitioner's sentence by reason of events that occurred subsequent to the time of petitioner's original sentence. On motion for rehearing the People offered to prove that during this period petitioner not only repeatedly violated prison discipline but also committed the following major offenses:

November 1970 — Assault with a chair leg on a correctional officer at San Quentin.

August 1971 — Assault with hot coffee on a correctional officer.

August 1971 — Involvement in attempted escape and murder.

December 1971 — Theft of handcuff keys from a correctional officer.

These incidents, if summarily established, would furnish ample cause for redetermination of petitioner's sentence at the increased term.

I would direct the trial court on rehearing to allow the People to prove the existence of good cause for redetermination of petitioner's sentence at the increased term.

A petition for a rehearing was denied June 19, 1974, and respondent's petition for a hearing by the Supreme Court was denied July 31, 1974. Wright, C. J., was of the opinion that the petition should be granted.