[Crim. No. 15844. First Dist., Div. Four. Dec. 28, 1976.]

In re WILLIAM ARCHIE FAIN on Habeas Corpus.

378

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and April Kestell Cassou, Deputy Attorneys General, for Appellant.

Paul W. Comiskey and Michael Satris for Petitioner.

**OPINION**

**RATTIGAN, J.**—The Adult Authority and Raymond K. Procunier, its Chairman, appeal from an order which directs the issuance of a writ of

habeas corpus and has the effect of ordering the immediate release of respondent William Archie Fain on parole from state prison. The order was made upon the trial court's determination that "final" administrative action taken by the Adult Authority, granting Fain a parole and setting a date for his actual release, could not be rescinded by the authority prior to his release. We have concluded that the court erred in this determination; we reverse the order.

Fain came within the parole-setting jurisdiction of the Adult Authority, pursuant to the Indeterminate Sentence Law (Pen. Code,[1] §§ 1168, 3040 et seq.; *In re Stanley* (1976) 54 Cal.App.3d 1030, 1033 [126 Cal.Rptr. 524]), by reason of his commitment to the Department of Corrections under sentences imposed upon his convictions, in two successive prosecutions, of murder and an array of other felonies committed in Stanislaus County. The several crimes and prosecutions, which resulted in three previous appellate decisions (*People* v. *Fain* (1969) 70 Cal.2d 588 [75 Cal.Rptr. 633, 451 P.2d 65]; *Fain* v. *Superior Court* (1970) 2 Cal.3d 46 [84 Cal.Rptr. 135, 465 P.2d 23]; *People* v. *Fain* (1971) 18 Cal.App.3d 137 [95 Cal.Rptr. 562]), are to be summarized in some detail because of their relevance to the Adult Authority's actions which are disputed on this appeal. The three previous decisions, and the record made in this proceeding, support the following recitals:

In Fain's first prosecution, which was conducted in the Stanislaus County Superior Court in 1967, he was charged with murder and seven other felonies committed in June of that year. These crimes are described, in varying detail, in the decisions cited. (See *People* v. *Fain, supra,* 70 Cal.2d 588 at pp. 592-595; *Fain* v. *Superior Court, supra,* 2 Cal.3d 46 at p. 49; *People* v. *Fain, supra,* 18 Cal.App.3d 137 at p. 140.) After a jury trial in the 1967 prosecution, Fain was convicted on one count of first degree murder (§§ 187, 189) for which the jury fixed the punishment at death, three counts of forcible rape (§ 261), one count of forcible sex perversion (§ 288a), two counts of kidnaping (§ 207), and one count of attempted kidnaping. (§§ 663, 207.) (*People* v. *Fain, supra,* 70 Cal.2d 588 at p. 592.) On automatic appeal from the judgment of conviction, the Supreme Court affirmed as to guilt on all counts but reversed as to penalty. (*Id.,* at pp. 592, 603.)

After the remand to the Stanislaus County Superior Court which followed, Fain was returned to that county and confined in its jail

---

[1]Except where otherwise expressly indicated, all statutory references are to the Penal Code.

pending the penalty retrial. In July 1969, while the retrial was still pending, he and five other jail prisoners plotted and effected an escape. He was promptly recaptured in Stanislaus County. He then moved the superior court for an order changing the venue of the penalty retrial to another county upon the ground that cumulative local publicity, attending both the 1967 crimes and the 1969 escape, had raised a reasonable likelihood that he could not obtain a fair penalty trial in Stanislaus County. (*Fain* v. *Superior Court, supra,* 2 Cal.3d 46 at pp. 49-51.) The superior court denied his motion and the Court of Appeal denied his petition for a writ of mandate (*id.,* at p. 51), but the Supreme Court granted it and ordered the Stanislaus County Superior Court to transfer the cause to another county. (*Id.,* at pp. 51-55.)

The Supreme Court's action eventually resulted in the removal of Fain's penalty retrial to the Sacramento County Superior Court. He was meanwhile prosecuted, again in Stanislaus County, for the 1969 escape and various crimes associated with it. This prosecution resulted in his conviction upon one count of escape (§ 4532, subd. (b)), two counts of first degree armed robbery (§ 211), one of auto theft (Veh. Code, § 10851), and one of kidnaping (§ 207), all as committed in 1969. (*People* v. *Fain, supra,* 18 Cal.App.3d 137, at pp. 141, 144.) On his appeal from the judgment of conviction, the Court of Appeal reversed it as to the kidnaping count; affirmed it otherwise; upheld the separate-sentencing procedure followed by the Stanislaus County Superior Court; and referred various other sentencing matters to the Sacramento County Superior Court, where Fain's retrial on the penalty phase of his first prosecution was then still pending. (*Id.,* at pp. 144-145.)

The recitals which continue from this point are supported by the record made in the present proceeding only. At Fain's penalty retrial, which was eventually conducted in the Sacramento County Superior Court in 1971, a jury fixed his punishment at life imprisonment on the 1967 murder count. In conjunction with a "combined commitment" to the Department of Corrections by that court in December of 1971, the court sentenced Fain (1) to life imprisonment on the 1967 murder count, (2) to the terms prescribed by law on the three counts of forcible rape, the two counts of kidnaping, the single count of forcible sex perversion, and the single count of attempted kidnaping, all as committed in 1967; and (3) to the terms prescribed by law on the count of escape, the two counts of first degree armed robbery, and the count of auto theft, all as committed in 1969. All of the sentences described under (2) and (3) were ordered to run concurrently with the life sentence imposed for the 1967 murder.

The Adult Authority's process of reviewing Fain's status, specifically including his eligibility for parole and the timing thereof, commenced from the 1971 base just described.[2] The events of the process, next recited, occurred subject to pertinent sections of the Penal Code and rules of the Adult Authority.[3]

By early 1975, the sentences imposed upon Fain for three of his crimes (the 1967 attempted kidnaping, the 1969 escape, and the 1969 auto theft) had been deemed "discharged" prospectively (as of Nov. 18, 1975). At that point (early 1975), he was still serving the life sentence imposed for the 1967 murder and the other sentences concurrently imposed for the two 1967 kidnapings, the three 1967 rapes, the 1967 sex perversion charge, and the two first degree armed robberies committed in 1969.

With respect to these ongoing sentences, Fain was given a hearing before a two-person "panel" on April 22, 1975. The panel consisted of one Adult Authority "member" and one "case-hearing representative."[4]

---

[2]This was because the "combined commitment" was made in 1971. Except for intermittent periods he had spent in county jails pending and during his trials in 1969 and 1971, Fain has actually been in state prison since he was first committed to the Department of Corrections after his convictions in 1967.

[3]We hereinafter cite these sources as appropriate, but quote only some of them because of their number and length. The "rules" mentioned and cited are the regulations of the Adult Authority which presently appear, and are officially designated as "Parole Board Rules" (and "PBR's"), in division 2 of title 15 of the California Administrative Code (commencing with § 2000 thereof). They were published there, effective June 1, 1976, pursuant to 1975 legislation which did not take effect until after the administrative events of this case occurred. (Stats 1975, ch. 1160, § 2, p. 2875 [adding § 5076.2 to the Penal Code].) The parties are nevertheless in agreement that the now-published rules were in effect at all pertinent times. Each is cited herein with the designation "PBR," followed by its Administrative Code (tit. 15, div. 2) section number and, in some instances, by its official caption as published. Various definitions, common to all of the rules, are alphabetically compiled in PBR 2080 (where the "parole board," for example, is defined as the Adult Authority itself).

[4]The quoted nomenclature, which pervades the record, derives from section 5076.1. In 1975, and as pertinent, the section provided (interpolation and italics added):

"5076.1. . . . The Adult Authority [which consists of nine members as constituted by section 5075] may meet and transact business *in panels.* Each Adult Authority *panel* shall consist of at least two members of the authority. Two members of the Adult Authority shall constitute a quorum for the transaction of business of *a panel.* No action shall be valid unless concurred in by a majority vote of the members present.

"The Adult Authority may employ *case-hearing representatives* to whom it may assign appropriate duties, including that of hearing cases and making recommendations to the Adult Authority. Such recommendations shall be made in accordance with policies established by a majority of the total membership of the Adult Authority. Such policies may provide that the recommendations of a case-hearing representative or panel of case-hearing representatives shall be either final or subject to review by a panel of the members of the Adult Authority, except that no recommendation of a case-hearing

By written entry made in Fain's administrative record on that date (on a "CDC 279" form), the panel granted him parole to be effective on a "parole date" (or "release date") which the panel fixed at October 12, 1976. The two panelists signed the CDC 279, and it was countersigned by another Adult Authority member (who had not been on the panel and had not participated in the hearing), on the date it was made (Apr. 22, 1975). In the language of section 5076.1 and the pertinent authority rules, the countersignature meant that the action "granting . . . parole" had thereupon "become final" as "approved by a panel of [two] members of the Adult Authority." (See § 5076.1, PBR 2003(a) and PBR 2045(b), quoted in fn. 4, *ante.*)

Another panel interviewed Fain at a further hearing on November 18, 1975. By written entry made in his record on that date (again on a "CDC 279" form), the panel applied a "jail credit" to the previously fixed release date and granted him an adjusted release date of June 18, 1976.

In the spring of 1976, Fain's imminent release on parole received extensive press publicity in and near Stanislaus County. They raised substantial public opposition to the prospect, much of which was communicated to the Adult Authority and to legislators representing the area. At least one of the legislators protested Fain's release to the aforementioned Raymond K. Procunier, the Chairman of the Adult Authority. On May 12, 1976, a month short of the scheduled release date, Procunier convened a three-man "Review Committee" pursuant to PBR

representative or representatives for the granting or denial of a parole, cancellation or revocation of a parole, the determination or redetermination of a term of imprisonment, or the discharge from a commitment, *shall become final until approved by a panel of members of the Adult Authority.* A recommendation by a case-hearing representative that a prisoner *be granted* or be denied *parole* shall be in writing."

The statutory nomenclature is reiterated or paraphrased in two of the Adult Authority's rules (see fn. 3, *ante*) as follows (italics added):

"[PBR] 2003. Hearing Representatives. (a) . . . The Adult Authority may employ case hearing representatives to whom it may assign appropriate duties, including the hearing of cases and the making of recommendations to the Adult Authority. Recommendations must be made in accordance with policies established by a majority of the total membership of the Adult Authority. The policy may dictate that recommendations either be final or subject to review, but *no recommendation for the granting,* denial or revocation *of parole,* the determination of a term of imprisonment, or the discharge of commitment *shall become final until approved by a panel of members of the Adult Authority.*

"[PBR] 2045. Official Decisions in Individual Cases. (a) Case Hearing Representatives. A case hearing representative may make a *final and official* decision in any case, except those decisions listed in subsection (b).

"(b) Parole Board Members. At least two parole board members will review and approve the following decisions before they become *final and official:* decisions *granting* or denying *parole,* determining or redetermining a term, revoking a parole, or discharging from a commitment. . . ."

2044.[5] The committee consisted of Procunier, another member of the Adult Authority, and a "representative." After reviewing Fain's administrative record on May 12, its members signed a "Summary Report" which cited apparent cause, and called for a "rescission hearing" directed to his previously granted parole. Although the report summarizes some of the events already recited above, it serves to frame some of the issues in this proceeding and on the appeal. We therefore quote its full text in the margin.[6]

---

[5] "[PBR] 2044. Review Committee. The review committee is composed of three members [of the Authority] or two members and one representative as designated by the Chairman or Vice-Chairman. Its purpose will be to review cases in which a hearing panel has a difference of opinion which cannot otherwise be resolved regarding the appropriate decision; cases which present unusual difficulties or policy questions; and cases submitted by the second level of appeal." (The last reference is to a review committee's permissible role as the final level of an "appeal" taken by an inmate from "any decision of the parole board which affects him." See PBR 2060-2065.)

[6] "SUMMARY REPORT . . .

"Chairman Procunier was notified on 5-12-76 of the impending parole of inmate William FAIN. A review of the central office file revealed that on 4-22-75 Representative B. Forman and Member R. Rushen recommended the inmate receive a parole on 6-18-76. This recommendation was reviewed and approved by Member R. Garcia. Subsequent to this parole granting action, the inmate was seen on 11-18-75 by Representatives R. Coyle and A. Smith, who applied jail credit of 3 months and 24 days to the previously given parole date. The application of jail credits was approved by Members R. Rushen and C. Lynum on 11-25-75.

"Chairman Procunier, noting the vast disparity in the amount of time being served by this inmate as compared with other inmates, for the number of crimes involved in the commitments, the bizarre and utterly cruel nature of the crimes, and the obvious problems the inmate had at the time of the commission of the offenses, indicated a need for the Adult Authority Review Committee to assess this case in terms of the appropriateness of release at this time.

"The case was submitted to the Adult Authority Review Committee on 5-12-76. The Review Committee, composed of Members R. Procunier and R. Brown, and Hearing Representative W. Gordon, discussed the case factors available to them and directed that a rescission hearing be scheduled as quickly as possible to determine the following factors:

"(1) Is the parole date, granted by members R. Rushen and R. Garcia, of 10-12-76, subsequently reduced to 6-18-76 by application of jail credits, appropriate in light of the gravity of the commitment offenses, the inmate's prior criminal history and his subsequent conduct while in the custody of the Department of Corrections?

"(2) Is the public's safety being protected by the early release of this multiple offender in spite of the gains shown by the inmate during the time he has been in custody?

"The opinion of the review committee is that parole at this time is not warranted; however a rescission hearing is ordered to make a final decision as to release readiness.

"Place on next available calendar for rescission hearing.
 "[s/] R. K. Procunier 5/12/76
 Member, Adult Authority
 "[s/] R. C. Brown 5/12/76
 . . . Member, Adult Authority
 "[s/] Walter A. Gordon, Jr. . . .
 Adult Authority Representative . . ."

The rescission hearing was eventually scheduled to be conducted on June 7, 1976, 11 days short of Fain's still-scheduled release date. Notice of the time and place of the hearing, and a copy of the review committee's "Summary Report" of May 12, were mailed to Fain's attorney. In a letter written to Procunier in late May, and among other things, the attorney requested "a more particular and specific statement of reasons, causes or charges which form the basis of this action of attempting to rescind parole at this time." In a reply letter written on June 1, the vice chairman of the Adult Authority responded to this request as follows: "I feel that the action taken by the review committee on May 12, 1976 is a sufficiently specific statement. However, to further clarify the issues at the June 7, 1976 [rescission] hearing, we will examine *whether or not the original grant of parole was an abuse of discretion.* For example, did the panel fail to consider or give any effect to the facts and circumstances of *each* of the crimes for which Fain was committed to state prison, *as required by clear legal and administrative rules*?" (Italics added.)

Fain then commenced this proceeding on June 4, 1976, by filing in the superior court a "Petition For Writ of Prohibition" in which he alleged some of the above-recited matters and others. The petition named Procunier and the "Members of the California Adult Authority" as respondents. In its prayer, Fain requested that "the Court order Respondents to desist or refrain from further proceedings rescinding Petitioner's parole" or, in the alternative, that it order them "to desist and refrain from further proceedings rescinding Petitioner's parole date until further order of the Court, and to show cause . . . on or before June 18, 1976 [Fain's still-unrescinded parole date], why Respondents should not be absolutely restrained from further proceedings rescinding Petitioner's parole date."

On the day the petition was filed, and in response to the alternative prayer, the trial court made an order in which it (1) directed the issuance of an "Alternative Writ"; (2) ordered Procunier to appear on June 15, 1976, and show cause "why any further proceedings in this matter shall not be absolutely restrained"; and (3) ordered "that the parole rescission hearing scheduled for June 7, 1976, be suspended pending showing of good cause why it shall be held."[7]

---

[7]The rescission hearing was consequently not conducted on June 7, and has not been conducted since.

Procunier and the Adult Authority appeared to the order to show cause by filing, on June 11, a return and points and authorities in opposition to a writ of prohibition. The trial court heard oral argument on June 15, at which time Fain's counsel argued for a writ of mandate. This prompted a further memorandum by the respondents, in which they opposed mandate upon the ground that Fain had not exhausted his administrative remedy, and a responsive memorandum by Fain. In the course of this briefing, his release date of June 18 was reached and passed.

On July 9, the trial court made a minute order in which it declared its determination, and the reasons (hereinafter quoted), that Fain was entitled to a writ of habeas corpus.[8] The minute order further directed that "[a] writ of habeas corpus shall issue, and counsel for petitioner shall prepare a proper order."

On July 19, the trial court signed and filed a formal order which provided in pertinent part: "1. For the reasons stated in the . . . [July 9 minute order] . . . , the writ of habeas corpus shall issue. Petitioner shall be released on parole subject to all normal conditions applicable to a prisoner on parole; pending appeal from this order his release shall be without bail, but subject to the conditions appropriate to his parole. [¶] 2. In order to complete arrangements for his release on parole, this order shall take effect 10 days from the date of this order. [¶] 3. FURTHER STAY OF EXECUTION DENIED."

The Adult Authority and Procunier filed successive notices of appeal in which they purported to appeal from both orders, and applied to this court for a stay of execution pending appeal. We treated the formal order of July 19 as the only one which was appealable, and stayed its execution as requested.[9]

---

[8] At oral argument and during the subsequent briefing, the parties apparently agreed that Fain's petition might properly be treated as seeking habeas corpus relief as well as prohibition or mandate. No contention to the contrary has been made on the appeal.

[9] These matters may be mentioned here: (1) The minute order of July 9 is not appealable because it directs the preparation of a formal order. (*Herrscher* v. *Herrscher* (1953) 41 Cal.2d 300, 304-306 [259 P.2d 901]; *Berman* v. *Klassman* (1971) 17 Cal.App.3d 900, 908 [95 Cal.Rptr. 417].) The formal order, which materialized and was signed on July 19, is appealable pursuant to section 1506. (2) As the July 9 order is not appealable as such, the appeal purportedly taken from it must be dismissed. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 31, p. 4046.) (3) It is nevertheless a source to which we may resort for the purpose of ascertaining the trial court's reasons for the decision exemplified by the appealable order. (*Ibid.*, § 231, pp. 4221-4222.) (4) Our stay of execution of the July 19 order was subsequently sustained by the Supreme Court as "authorized by section 1506." (*In re Fain on Habeas Corpus*, Crim. 19525 [order dated Aug. 11, 1976].)

In the minute order entered on July 9, the trial court stated the reasons for its formal order as follows (numbered paragraphing added):

"[1] The Adult Authority is without the power to review a decision by one of its member panels, which has become final under applicable rules, granting petitioner [Fain] parole. The review of an administrative agency decision which has become final is a role of the courts, not of the agency itself. Asserted abuse of discretion may be tested by an appropriate Writ of Administrative Mandamus proceeding.

"[2] Although Penal Code section 3060 gives the Authority full powers to grant or revoke a parole, those powers are circumscribed by Penal Code section 3063 which declares that no parole shall be revoked without just cause. The Authority's rules set out three grounds upon which a parole rescission may be based: (1) Disciplinary conduct by the inmate; (2) Psychiatric deterioration of the inmate; and (3) Any new information which indicates that parole should not occur. None is applicable here."

We interpret this language as expressing two distinct but overlapping determinations, with both of which we disagree as next separately discussed.

### The Administrative "Finality" of the Parole-Granting Decision as a Bar to Its "Reconsideration"

In the first paragraph just enumerated and quoted, which addressed the Adult Authority's broad power to "review" a parole-granting decision by one of its panels, the trial court concluded that the power was wholly lacking, and that the decision was subject to "review" by the courts alone, once it had "become final under applicable rules" of the authority. The term "review," when used with respect to administrative action, commonly connotes—and the trial court expressly connoted—the concept of "review" of the action in terms of its examination by a superior body which is empowered to set it aside for error. The action taken by the Adult Authority through its review committee, subjecting Fain's unexecuted parole to a rescission hearing, invoked the distinguishable concept of "review," by and within the authority itself, as a process in which it would *reconsider* the 1975 decision whereby the first panel granted him parole.[10] The trial court's first determination thus

---

[10]The reference here is to the decision made and approved on April 22, 1975, which was a decision "granting parole" and was squarely addressed by the review committee's

abridged the authority's power of *reconsideration* upon the basis of administrative finality.

█ The actions of the Adult Authority, including those granting a parole and fixing a release date, are purely administrative in nature. (*In re Lee* (1918) 177 Cal. 690, 693 [171 P. 958]; *In re Schoengarth* (1967) 66 Cal.2d 295, 304 [57 Cal.Rptr. 600, 425 P.2d 200]; *Fleischer* v. *Adult Authority* (1962) 202 Cal.App.2d 44, 47-48 [20 Cal.Rptr. 603].) They are thus not "judicial functions" which may be restrained by a writ of prohibition. (Code Civ. Proc., § 1102; *Fleischer* v. *Adult Authority, supra.*) They are performed within a range of administrative discretion which has been described as "great" (Falk, *The Supreme Court of California 1971-1972* (1973) 61 Cal.L.Rev. 273, 427-428), "absolute," and "almost unlimited." (Note, *The California Adult Authority* (1972) 5 U.C. Davis L.Rev. 360, 368, 376-377.) The exercise of this discretion involves the deliberate assessment of a wide array of individualized factors on a case-by-case basis, and the striking of a balance between the interests of the inmate and of the public. (*In re Schoengarth, supra,* at p. 300; *In re Minnis* (1972) 7 Cal.3d 639, 644-645 [102 Cal.Rptr. 749, 498 P.2d 997].) The authority, acting through one of its panels to grant a parole, is thus a *deliberative* body by necessary definition.

█ Any deliberative body—administrative, judicial or legislative —has the inherent power to reconsider an action taken by it unless the action is such that it may not be set aside or unless reconsideration is precluded by law. (See, e.g., Davis, Administrative Law Text (3d ed. 1972) § 18.09, pp. 369-371 [administrative body]; 3 Witkin, Cal. Procedure, *op. cit., supra,* Pleading, § 836, p. 2443 [trial court]; rule 27(a), Cal. Rules of Court, and 6 Witkin, *op. cit.,* Appeal, § 596, p. 4525 [appellate court]; Mason, Manual of Legislative Procedure (1962 ed.) §§ 450-451, pp. 302-303 [legislative body].) The power of *administrative* reconsideration is consistent with the principle that " 'notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors.' " (*In re Muszalski* (1975) 52 Cal.App.3d 500, 506 [125 Cal.Rptr. 286] [quoting *McKart* v. *United States* (1969) 395 U.S. 185, 195 (23 L.Ed.2d 194, 204, 89 S.Ct. 1657)].)

---

action calling for a rescission hearing. (See par. "(1)" of the committee's "Summary Report" quoted in fn. 6, *ante.*) The decision of the second panel, made and approved in November of 1975, was not one "granting parole" and was peripheral to the April decision because its sole effect was to adjust Fain's prospective release date. The November decision need not be mentioned further.

■ The 1975 decision, granting Fain a parole with a 1976 release date, is not immune from reconsideration as an administrative action which may not be set aside. A prison inmate has no vested right in his prospective liberty upon a parole once granted him. (See *In re McLain* (1960) 55 Cal.2d 78, 87 [9 Cal.Rptr. 824, 357 P.2d 1080].)

■ Whether reconsideration of an administrative action is precluded by law depends upon "when the authoritative law intends it to be final," which is to be determined in every case "upon the scheme of law by which [administrative] power is conferred." (*Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 323 [144 P.2d 4]; *McDonald's Systems of California, Inc.* v. *Board of Permit Appeals* (1975) 44 Cal.App.3d 525, 544 [119 Cal.Rptr. 26].) Terminal finality of an administrative action is commonly prescribed by enabling law in terms of a post-action period after which the administrative body may not reconsider for lack of *jurisdiction.* (See, e.g., Gov. Code, § 11521, subd. (a) [agency's "power to order a reconsideration" expires in 30 days under the Administrative Procedure Act]; *McDonald's Systems of California, Inc.* v. *Board of Permit Appeals, supra,* at pp. 544-545 [fn. 15 and authorities there collected]. As to judicial bodies, see rules 24(a) and 27(a), Cal. Rules of Court; *Scoville* v. *Keglor* (1938) 29 Cal.App.2d 66, 67 [84 P.2d 212]; 6 Witkin, Cal. Procedure, *op. cit., supra,* Appeal, §§ 511 [p. 4461], 513-514 [pp. 4462-4463].) Such finality, and the consequence of lapsed jurisdiction, are not readily to be inferred if the enabling law does not expressly provide for them. (See *McDonald's Systems of California, Inc.* v. *Board of Permit Appeals, supra* [fn. 15].)

■ The principal provisions of the enabling law which underlies the Adult Authority's parole-granting powers appear in sections 3040, 3041, and 5076.1. Section 3040 is a plenary grant of the parole power as such, and section 3041 prescribes when it may first be exercised, but neither statute speaks to the administrative finality of a grant of parole.[11] Section 5076.1 refers to a point at which a case-hearing representative's recommendation of parole "shall become final," but the reference appears in a context whose manifest purpose is to limit the representatives' parole-granting powers; the context operates to withhold "finality" from their recommendations *until,* rather than to impart it *when,* the

[11]As pertinent, these two sections provide:
"3040. The Adult Authority shall have the power to allow prisoners imprisoned in the state prisons to go upon parole outside the prison walls and inclosures. . . .
"3041. (a) In any case the matter of parole may be determined by the Adult Authority at any time after the actual commencement of such imprisonment. . . ."

approval of "a panel of members of the Adult Authority" has been obtained. (See § 5076.1 as quoted in fn. 4, *ante.*) A member-approved recommendation of parole becomes "final," of course, and subject to "revocation" as procedurally distinguished from "rescission" if cause appears, when the inmate is actually released on parole. Pending his release, his parole date has been expressly described as no more than "tentative." (*In re Clutchette* (1974) 39 Cal.App.3d 561, 565 [114 Cal.Rptr. 509].)

It thus appears that the enabling law (§§ 3040, 3041 and 5076.1) does not support the trial court's conclusion that the decision granting Fain a parole became so terminally "final," once it had been recommended and approved on April 22, 1975, that the Adult Authority subsequently lost its inherent power to reconsider the action in the sense that its jurisdiction had lapsed. This being so, such finality was not imposed by the "applicable rules" of the authority to which the court referred in its first determination. Because the language of the two rules which are "applicable" (PBR 2003(a) and 2045(b)) calculatedly adopts the pertinent context of section 5076.1 (see fn. 4, *ante*), they similarly operate to withhold finality from a representative's parole recommendation until, but not to impart it when, the requisite "panel of members" has approved.

Neither rule may be otherwise interpreted because the authority may not adopt an administrative rule which diminishes its inherent power to reconsider its actions where the Legislature has not done this in the enabling law. (*In re Stanley, supra,* 54 Cal.App.3d 1030 at p. 1036.) The plain language of its rules, as adopted, must be interpreted to comport with the enabling law rather than to conflict with it. (*Cozad* v. *Board of Chiropractic Examiners* (1957) 153 Cal.App.2d 249, 258 [314 P.2d 500]; *Mission Pak Co.* v. *State Bd. of Equalization* (1972) 23 Cal.App.3d 120, 125 [100 Cal.Rptr. 69].) The trial court misconstrued the "applicable rules" here.

### *The Adult Authority's Power to "Rescind" an Unexecuted Parole*

■ The power of the Adult Authority to rescind a decision granting parole, by action taken before the affected inmate has actually been released from prison, is expressly spelled out in the Parole Board Rules. (See chapter 6 thereof ["Parole Revocation and Rescission"], article 6 ["Parole Rescission"], commencing with PBR 2660.) Subject to the

inmate's right to procedural due process in its exercise (*In re Prewitt* (1972) 8 Cal.3d 470, 474 [105 Cal.Rptr. 318, 503 P.2d 1326]; *In re Clutchette, supra,* 39 Cal.App.3d 561 at p. 565), it has been recognized by the courts as an adjunct of the authority's plenary power to "suspend, cancel or revoke any parole," pursuant to section 3060, if "cause" for such action exists as required by section 3063.[12] (*In re McLain, supra,* 55 Cal.2d 78 at pp. 84-87; *In re Clutchette, supra,* at pp. 561, 563, 564-565.) The power to rescind is thus a variant of the agency's power to reconsider, but its focus is cast upon *cause* to exercise it as distinguished from *jurisdiction* to do so.

The trial court correctly expressed this much as a preface to the second determination made in its minute order of July 9, 1976 (quoted *ante*). It also correctly stated that "[t]he Authority's rules set out three grounds upon which a parole rescission may be based: (1) Disciplinary conduct by the inmate; (2) Psychiatric deterioration of the inmate; and (3) Any new information which indicates that parole should not occur."[13] In effect, however, the court further concluded that Fain was entitled to be released on parole, as scheduled, for the stated reason that none of the specified elements was "applicable here." These conclusions were incorrect.

We first find error in the determination last quoted. There was no evidence of "disciplinary conduct" or "psychiatric deterioration" on

---

[12]In pertinent part respectively, these sections provide:

"3060. The Adult Authority shall have full power to suspend, cancel or revoke any parole without notice, and to order returned to prison any prisoner upon parole. . . .

"3063. No parole shall be suspended or revoked without cause, which cause must be stated in the order . . . ."

[13]These three elements are actually "set out" in PBR 2661, which provides:

"2661. Reportable Information. (a) Disciplinary Conduct. The following types of conduct on the part of inmates with a release date must be reported to the parole board: . . . [the text then describes 10 types of specific and general in-prison misconduct] . . . .

"(b) Psychiatric Deterioration. Any inmate whose mental state deteriorates to . . . [a significant point, as described] . . . and who is within 90 days of release must be reported to the parole board.

"(c) Other. Any new information which indicates that parole should not occur. Examples include: . . . . [various situations, none of which has occurred in Fain's case] . . . ."

The procedure which must attend the "reporting" of any such information is outlined in the rules following PBR 2661. The information is referred to the Adult Authority's "central office calendar" (PBR 2662(a) ["Reporting"]), which is an administrative control facility through which the Authority monitors both executed and unexecuted paroles. (See PBR 2042.) "The central office calendar will either note the incident or information and take no action, or will order the matter scheduled for rescission proceedings" (PBR 2662(b) ["Decision"]) and is required to "document its decision" in either event. (PBR 2662(c) ["Documentation"].)

Fain's part, within the meanings of PBR 2661(a) or (b), but by May of 1976 the Adult Authority had newly become aware of public outrage, impressive in its vehemence and the number of people expressing it, at the prospect of his release from prison as then scheduled. ▇ ▇▇▇ This awareness did not in itself command rescission of his parole but, within the meaning of the omnibus language of PBR 2661(c), it was "new information which indicates that parole should not occur" and which required the authority's consideration of that possibility in compliance with its rules.[14] (PBR 2661(c), 2662. See fn. 13, *ante.*) To the extent that it defines *a* ground for parole rescission, PBR 2661(c) was "applicable here."

▇ Even if it were not, we find further error in the trial court's implicit conclusion that the three elements "set out" in the Adult Authority's rules are *the* grounds for parole rescission. The rules do not define them as "grounds" for rescission at all; PBR 2661 refers to them only as matters which "must be reported" to the authority in specified instances. (See fn. 13, *ante.*) In the strictly procedural rules which follow (see *ibid.*), they are made out to be grounds upon which a parole rescission "may" be based (as the trial court put it), but not the *exclusive* grounds for that action. The trial court, interpreting them as exclusive, decided in effect that the authority's procedural rules operate (1) to preclude it from rescinding a parole for any "cause" not expressly defined in them; and thereby (2) to stultify the exercise of its substantive discretion, in parole matters, which the Legislature has not limited in the enabling law. As we have previously seen with respect to the agency's inherent power to reconsider its actions while it retains unlapsed jurisdiction to do so, its rules may not be given this interpretation. (*In re Stanley, supra,* 54 Cal.App.3d 1030 at p. 1036; *Cozad* v. *Board of*

---

[14]Fain has contended, in the trial court and on the appeal, that the Adult Authority considered rescinding his parole because Chairman Procunier has improperly yielded to public and political pressure. The contention is to be rejected, as a matter of law, because the constitutional doctrine of separation of powers precludes judicial inquiry into the "motivation or mental processes" which may underlie action by a nonjudicial agency of government. (*County of Los Angeles* v. *Superior Court [Burroughs]* (1975) 13 Cal.3d 721, 723, 727, fn. 5 [119 Cal.Rptr. 631, 532 P.2d 495]; *Mandel* v. *Hodges* (1976) 54 Cal.App.3d 596, 609 [127 Cal.Rptr. 244].) It is also untenable in point of fact. The authority's developing awareness of the public hostility to Fain's release was "new information which indicates"—or not, depending upon the result to be reached in the rescission proceedings which the trial court foreclosed—that his "parole should not occur" because it reaches such pertinent questions as whether he may be assimilated into society, and indeed whether he will be personally safe, outside of prison. In light of the multiplicity and nature of his crimes, his documented notoriety, and the sheer dimensions of the public's hostility to his release, the unfavorable portents may not be localized to Stanislaus County.

▇

*Chiropractic Examiners, supra,* 153 Cal.App.2d 249 at p. 258; *Mission Pak Co.* v. *State Bd. of Equalization, supra,* 23 Cal.App.3d 120 at p. 125. See also *In re Muszalski, supra,* 52 Cal.App.3d 500 at p. 506.)

### The Issue of "Cause" for
### Rescission of Fain's Parole

We have seen that the Adult Authority is empowered to rescind Fain's parole for cause, and that the trial court erroneously found cause lacking because it misinterpreted the authority's rules. ■ The determination was accordingly erroneous for the additional—and final—reason that it was prematurely reached. Whether there is cause for rescission remains to be decided by the authority at the rescission hearing which has yet to be conducted because the trial court "suspended" it when this proceeding was commenced. (See the text at fn. 7, *ante.*)

Since the authority's discretion in parole matters is "great," "absolute," and "almost unlimited," as previously described, it is sufficiently broad to include the apprehension and correction of a mistake made by the agency in granting a parole. (See *In re Muszalski, supra,* 52 Cal.App.3d 500 at p. 506.) This means that "cause" for the rescission of Fain's parole may exist if the authority reasonably determines, in its discretion, that the parole was "improvidently granted" (*In re Prewitt, supra,* 8 Cal.3d 470 at p. 474) under the circumstances which appeared in 1975 and which may have appeared since. We do not prejudge that question, and the trial court should not have undertaken to decide it. It will be resolved by the authority, whose answer to it may be subject to judicial review when it is finally reached.

Short of that event, even the possibility that Fain will be deprived of his prospective liberty on parole may not be based upon "mere whim, caprice, or rumor." (*In re McLain, supra,* 55 Cal.2d 78 at p. 87.) There must accordingly have been some "cause" for the possibility having materialized, and Fain's attendant right to procedural due process entitled him to know what it was. (*In re Prewitt, supra,* 8 Cal.3d 470 at p. 474; *In re Clutchette, supra,* 39 Cal.App.3d 561 at p. 565.)

The review committee obviously found cause for the *possibility* in May 1976, when it reviewed Fain's record and the 1975 action which produced his parole. (See the "Summary Report" of the committee as quoted in fn. 6, *ante.*) Since cause for the *reality* remains to be seen, we refrain from analyzing the committee's preliminary determination; given

Fain's criminal background and the apparent reasoning of the 1975 panel which granted him parole and a 1976 release date, it will suffice to say that the record before the review committee supported the action it took, and its reasons for acting, as stated in its "Summary Report." The delay in its action was most regrettable from Fain's standpoint, but society's stake in the situation required late reconsideration of his parole in preference to none at all.

A wide-ranged array of miscellaneous arguments advanced by the parties need not be reached, but a few final points should be briefly stated. There was no irregularity in the review committee's intervention, nor in Procunier's initiative in causing it. Under the cumulative circumstances shown to have occurred by early 1976, Fain's case presented "unusual difficulties" which warranted review committee action. (See PBR 2044 as quoted in fn. 5, *ante*. The parties, in fact, treat the case as a matter of first impression.) Procunier properly initiated the action in the performance of his statutory obligation, as Chairman of the Adult Authority, to "exercise all duties and functions necessary to insure that the responsibilities of the authority are successfully discharged." (§ 5075. See also PBR 2002(a).)

Fain did not exhaust his administrative remedy by pursuing an appeal, as such, from the review committee's decision which set the rescission proceedings in motion. (See PBR 2060-2065.) Because those proceedings would have resolved any and all questions he might have raised by appealing the decision, an administrative appeal would have been redundant and wholly ineffective. In the latter circumstance, the conventional exhaustion doctrine has no application. (2 Witkin, Cal. Procedure, *op. cit., supra*, Actions, § 182, pp. 1046-1047.)

Other points raised by Fain involve the composition and functions of the panel which would have conducted the rescission hearing. These are also matters now to be remitted to future proceedings, which will be conducted in accordance with his continuing right to procedural due process. (*In re Prewitt, supra*, 8 Cal.3d 470 at p. 474; *In re Clutchette, supra*, 39 Cal.App.3d 561 at p. 565.)

### Disposition

As previously noted, the parties have treated Fain's petition as seeking habeas corpus *or* prohibition *or* mandate. (See fn. 8, *ante*.) For the reasons we have stated with respect to the trial court's errors in granting

it, habeas corpus relief is not available to him. As we have also stated, prohibition does not lie to restrain the Adult Authority's administrative actions. (*Fleischer* v. *Adult Authority, supra,* 202 Cal.App.2d 44 at pp. 47-48.) Mandate does not lie in any direction which favors Fain, and we perceive no basis for it. If he is to have a remedy, it will lie at the conclusion of the rescission proceeding which must be completed upon the remand hereinafter ordered. If the authority does not pursue and conclude the proceeding as a matter of urgency, he may consider further resort to the courts to compel those results.

The purported appeal from the minute order dated July 9, 1976, is dismissed. The order dated July 19, 1976, is reversed. The trial court is directed to remand the cause to the Adult Authority for further proceedings consistent with the views expressed in this opinion.

Caldecott, P. J., and Emerson, J.,* concurred.

A petition for a rehearing was denied January 26, 1977, and petitioner's application for a hearing by the Supreme Court was denied March 17, 1977. Tobriner, J., was of the opinion that the application should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.