This petition for writ of habeas corpus arises out of a strike against The Water Works Board of the City of Birmingham by hourly employees of that Board. The petition was filed on behalf of James R. Purvis after he was incarcerated under a sentence of criminal contempt by the Circuit Court of Jefferson County. The contempt sentence was based on Purvis' violation of a temporary restraining order enjoining the strike and all picketing activities against the Board. Purvis was sentenced to an aggregate of fifteen days in jail for three separate instances of contempt. This court granted a stay of execution of the sentence after Purvis had served eight days of the sentence.
We deny the petition.
 Issue
The dispositive issue in this proceeding is whether Purvis can challenge, by petition for the writ of habeas corpus, the constitutional validity of the trial court's temporary restraining order when Purvis failed to try to have the order dissolved or modified before violating it?
 Facts
In July of 1979, Purvis requested: (1) the Board to recognize his union as the exclusive bargaining representative for the hourly-paid employees of the Board; (2) the Board to commence collective bargaining with the union; and (3) the Board to begin check-off of union dues from the payroll for employees who joined the union. On 31 July 1979 Purvis advised the Board its employees would commence a strike against it and all of its facilities unless the union's demands were met. Upon the Board's refusal, the strike and picketing of the Board's facilities were commenced at approximately 6:00 a.m. on Thursday, 2 August 1979. That same morning the Board petitioned the Jefferson County Circuit Court for a temporary restraining order alleging, inter alia, the strike was illegal, striking employees were harassing and interfering with customers entering and leaving its buildings and property, and it, and the City of Birmingham would suffer irreparable injury if the order was not issued before notice could be served on the defendants.
At 1:40 on Thursday, 2 August 1979, a temporary restraining order was issued which contained, among other things, the following:
 "A. The defendants, separately and severally, their officers, agents, and members, and all persons acting in concert or combination with them, who have actual notice of this temporary restraining order by personal service or otherwise be and they are hereby restrained, pending the final determination of this action, from:
 "1. causing, inducing, engaging in or encouraging a strike, work stoppage, or concerted refusal to work at The Board or any of its facilities for the purpose of requiring The Board to agree to defendants' demands that the plaintiff recognize, bargain with or enter into agreements with the defendant Union.
 "2. employing, supporting, maintaining or participating in picketing at, about, or around, or in front of any building or property of The Board for the purposes set forth in paragraph 1 above;
 "3. threatening, coercing, harassing, or interfering with any employee of the plaintiff who is engaging in or seeking to engage in the lawful performance of his job with the plaintiff;
 "4. harassing, threatening, coercing, or otherwise interfering in any manner whatsoever with the right of any person to enter or leave any of plaintiff's buildings or property.
 "5. causing, inducing, engaging in or encouraging any act of interference with the lawful operations of The Board; *Page 514 
 "6. Conspiring with any other person to commit any of the acts hereinabove enumerated."
At 4:08 p.m. on Thursday, 2 August 1979, Purvis was served with a copy of the temporary restraining order by a deputy sheriff. The evidence at the contempt hearing discloses that Purvis told the deputy "* * * he would stay out, even if he had to go to jail." Consistent with this declaration Purvis continued to picket the Board's Shades Mountain facility the rest of Thursday afternoon and the morning of Friday, 3 August 1979. The evidence further discloses that Purvis ignored and violated the order by threatening a supervisor that drove through the picket line.
On Friday, 3 August 1979, the Board filed a petition to show cause why Purvis should not be held in contempt of court. Purvis was served that same day at 1:55 p.m. Purvis then filed a motion to dissolve or modify the temporary restraining order. The court ordered Purvis to appear before the court on Monday morning, 6 August 1979, to show cause why he should not be held in contempt and, further, denied Purvis' motion to dissolve or modify the temporary restraining order.
On Saturday morning, 4 August 1979, the Board amended its petition to show cause. On Monday, 6 August 1979, after a hearing, the trial court found Purvis had violated the temporary restraining order after having received proper notice by: (1) continuing to picket Thursday afternoon; (2) threatening to assault a supervisor; and (3) his picketing activities on Friday morning. Three separate judgments of criminal contempt were entered against Purvis and he was sentenced to three consecutive five day sentences for each offense as well as being fined $100 for each offense. Thereafter, this petition was filed.
 Decision
Purvis contends the trial court's temporary restraining order was transparently invalid, unconstitutional and required the irretrievable surrender of his important constitutional rights; therefore, there can be no valid finding of contempt because adequate and effective appellate procedures did not exist to challenge the order's validity. We cannot agree with this contention.
It has long been the rule of law that an order issued by a court with jurisdiction over the subject matter must be obeyed by the parties subject to the order until it is reversed by orderly and proper proceedings even though the order may be constitutionally defective or invalid. See Pasadena City Boardof Education v. Spangler, 427 U.S. 424, 96 S.Ct. 2697,49 L.Ed.2d 599 (1976); Maness v. Meyers, 419 U.S. 449,95 S.Ct. 584, 42 L.Ed.2d 574 (1975); Walker v. City of Birmingham,279 Ala. 53, 181 So.2d 493 (1966), affirmed, 388 U.S. 307,87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); United States v. United MineWorkers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884
(1947). Purvis acknowledges this established principle of law but asserts the order had such a chilling effect on his First Amendment rights that the order was void on its face; therefore, he was entitled to disregard the order because there was insufficient time to appeal from it. We cannot agree that the order was transparently invalid or that such exigent circumstances existed as to allow Purvis to disregard it.
We recognize that court orders may be disregarded in certain rare cases where compliance with the court order would cause irreparable injury and appellate vindication would not have its ordinary consequences of totally repairing the error. SeeManess, supra. However, such cases generally involve orders issued during criminal trials. Again, see Maness, supra, andCobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540,84 L.Ed. 783 (1940). We further recognize that if an injunction is transparently invalid, or only has a frivolous pretense to validity, its validity may be challenged in a contempt proceeding. Walker v. City of Birmingham, 388 U.S. 307,87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). In this case, however, Purvis was not justified in refusing to obey the temporary restraining order. See United States v. United Mine Workers ofAmerica, supra. *Page 515 
The United States Supreme Court has consistently recognized that the state has a strong interest in regulating the use of its streets and other public places; and when protest takes the form of mass demonstration, parades, or picketing on public streets and sidewalks, the state has a legitimate concern in preventing public disorder and violence and promoting the free passage of traffic. Walker, supra. Moreover, the First and Fourteenth Amendments to the United States Constitution, although they do protect, do not afford the same kind of freedom to those who communicate ideas by conduct, such as picketing on streets and highways, as the amendments afford those who communicate ideas by mere speech. Shuttlesworth v.City of Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162
(1969); Walker, supra. Since violence erupted during the strike and picketing, and the City of Birmingham's water service was in danger of being shut down, the trial court's temporary restraining order was not transparently invalid or frivolous. Also, a hearing was scheduled within five days, and Purvis could easily have sought modification or dissolution of the order before disobeying it.
In reaching our decision we must emphasize that we are not encouraging the issuance of temporary restraining orders against peaceful picketing. It is very clear that peaceful picketing is protected by the First Amendment. Shuttlesworth, supra; Thornhill v. State of Alabama, 310 U.S. 88,60 S.Ct. 736, 84 L.Ed. 1093 (1940). First Amendment rights should only be enjoined in extreme situations. Temporary restraining ordersshould only be issued without a prior hearing when it is clearfrom specific facts alleged by affidavit or by verifiedcomplaint that immediate and irreparable injury, loss, ordamage, will result if the temporary restraining order is notissued prior to allowing the opposing party an opportunity tobe heard. Rule 65 (b)(1), ARCP. When a temporary restraining order is to be issued without hearing, curtailing First Amendment rights, even closer scrutiny of the existing circumstances under which it is sought should be exercised by the trial court.
The sole basis for our decision in this case is the need to maintain the integrity of court orders. In reaching this decision we make no finding respecting the constitutional validity of the temporary restraining order. It is clear in this case that Purvis was fully cognizant that he risked jail confinement if he deliberately defied the court order; yet he chose to do so. We fully agree with the statement of Justice Stewart in Walker v. City of Birmingham:
 "The rule of law that Alabama followed in this case reflects a belief that in the fair administration of justice no man can be judge in his own case, however exalted his station, however righteous his motives, and irrespective of his race, color, politics, or religion. This Court cannot hold that the petitioners were constitutionally free to ignore all the procedures of the law and carry their battle to the streets. One may sympathize with the petitioners' impatient commitment to their cause. But respect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom." 388 U.S. at 320, 87 S.Ct. at 1832.
Purvis makes various other arguments in support of this petition for the writ of habeas corpus. None have merit, therefore need not be addressed.
For the reasons assigned, the petition for writ of habeas corpus is denied and the stay of execution of the remainder of the sentences vacated.
PETITION DENIED AND STAY VACATED.
TORBERT, C.J., BLOODWORTH and FAULKNER, JJ., and TYNER, Retired Circuit Judge sitting as Special Justice, concur. *Page 516