Rel: December 20, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

————————————————

### CL-2024-0300

————————————————

**Southeast Cannabis Company, LLC
and Yellowhammer Medical Dispensaries, LLC**

**v.**

**Alabama Medical Cannabis Commission and Rex Vaughn,
Sam Blakemore, Dwight Gamble, Dr. Jimmie Harvey,
James Harwell, Taylor Hatchett, Dr. Eric Jensen,
Dr. Angela Martin, Hon. Charles Price, Dr. William Saliski,
Loree Skelton, Dr. Jerzy Szaflarski, Dr. H. Mac Barnes,
and Dion Robinson, in their official capacities as members of
the Alabama Medical Cannabis Commission**

————————————————

### CL-2024-0312

————————————————

**TheraTrue Alabama, LLC**

**v.**

**Alabama Medical Cannabis Commission and Rex Vaughn,
Sam Blakemore, Dwight Gamble, Dr. Jimmie Harvey,
James Harwell, Taylor Hatchett, Dr. Eric Jensen,
Dr. Angela Martin, Hon. Charles Price, Dr. William Saliski,
Loree Skelton, Dr. Jerzy Szaflarski, Dr. H. Mac Barnes,
and Dion Robinson, in their official capacities as members of
the Alabama Medical Cannabis Commission**

**Appeals from Montgomery Circuit Court
(CV-24-58)**

PER CURIAM.

Southeast Cannabis Company, LLC ("SCC"), Yellowhammer Medical Dispensaries, LLC ("Yellowhammer"), and TheraTrue Alabama, LLC ("TheraTrue"), appeal from a summary judgment entered by the Montgomery Circuit Court ("the circuit court") in favor of the Alabama Medical Cannabis Commission ("the AMCC") and Rex Vaughn, Sam Blakemore, Dwight Gamble, Dr. Jimmie Harvey, James Harwell, Taylor Hatchett, Dr. Eric Jensen, Dr. Angela Martin, Hon. Charles Price, Dr. William Saliski, Loree Skelton, Dr. Jerzy Szaflarski, Dr. H. Mac Barnes, and Dion Robinson ("the commissioners"), in their official capacities as members of the Alabama Medical Cannabis Commission.

Procedural Background

In 2021, the Alabama Legislature enacted the Darren Wesley "Ato" Hall Compassion Act ("the Act"), Ala. Code 1975, § 20-2A-1 et seq., which

2

regulates the medical-cannabis industry within this state. See Ala. Code 1975, § 20-2A-2. The Act establishes the AMCC as a state agency with the responsibility for awarding and issuing licenses relating to the production and sale of medical cannabis within Alabama. See Ala. Code 1975, § 20-2A-20, § 20-2A-22(b), and § 20-2A-50. The Act provides that "licenses shall be granted to integrated facilities, as well as to independent entities in the following categories: Cultivator, processor, dispensary, secure transporter, and testing laboratory," § 20-2A-50(a); however, the AMCC may not issue more than four dispensary licenses, Ala. Code 1975, § 20-2A-64(b), or more than five integrated-facility licenses, Ala. Code 1975, § 20-2A-67(b).

On October 15, 2022, the AMCC promulgated rules for the administration of the Act, including rules governing the licensing process. See Ala. Admin. Code (AMCC), r. 538-X-3-.01 et seq. Subsequently, the AMCC made an "initial offering" of the various medical-cannabis licenses authorized by the Act. SCC and TheraTrue each filed a proper and timely application for an integrated-facility license, and Yellowhammer filed a proper and timely application for a dispensary license. Between April 13, 2023, and June 12, 2023, the

commissioners reviewed the applications. As part of the review process, the AMCC retained the University of South Alabama ("USA") to assess the 90 license applications that were submitted, which USA evaluated, scored, averaged, and ranked based on suitability and other criteria. See Ala. Admin. Code (AMCC), r. 538-X-3-.10 (setting forth the medical-cannabis license review process).

On June 12, 2023, the commissioners convened a meeting to award the initial medical-cannabis licenses. At that meeting, the AMCC awarded integrated-facility licenses[1] to SCC and TheraTrue and a dispensary license[2] to Yellowhammer. On June 16, 2023, however, the AMCC entered an administrative order staying the issuance of any medical-cannabis licenses based on concerns of potential scoring errors made by USA. See Ala. Admin. Code (AMCC), r. 538-X-3-.18(j) (authorizing the AMCC to stay the issuance of licenses).

---

[1]Section 20-2A-67(a), Ala. Code 1975, provides that an integrated-facility license authorizes the cultivation, processing, transporting, dispensing, and sale of medical cannabis.

[2]Section 20-2A-64(a)(1), Ala. Code 1975, provides that a dispensary license authorizes the purchase and transfer of medical cannabis from a processor, cultivator, or integrated facility and the dispensing or sale of cannabis to a registered qualified patient or registered caregiver.

On August 10, 2023, the commissioners convened another meeting at which they lifted the administrative stay and voted to "void" the June 12, 2023, medical-cannabis-license awards. In the same meeting, the commissioners voted to award the medical-cannabis licenses anew. Based on the commissioners' votes, the AMCC awarded the same licenses to SCC, TheraTrue, and Yellowhammer. After a wave of litigation commenced by disappointed applicants, on August 21, 2023, the circuit court entered a temporary restraining order ("the TRO") precluding the AMCC and the commissioners from taking any further action to issue the licenses that had been awarded in the August 10, 2023, meeting. On August 31, 2023, the AMCC imposed a second administrative stay preventing issuance of the licenses awarded during the August 10, 2023, meeting.

On October 12, 2023, the AMCC adopted an "emergency" rule to modify the application-review process. After obtaining relief from the TRO and lifting the second administrative stay, the AMCC convened a meeting on October 26, 2023, at which the commissioners voted to "rescind" the medical-cannabis-license awards that were made on August 10, 2023, and to restart the application-review process. On December 1

and December 12, 2023, the commissioners convened again and awarded licenses; this time, SCC, TheraTrue, and Yellowhammer were not awarded a license.

Between November 20, 2023, and December 26, 2023, SCC, TheraTrue, and Yellowhammer each commenced a civil action against the AMCC. Through various orders, the circuit court purported to consolidate those actions with another action it referred to as "the master case."[3] On February 21, 2024, the circuit court severed some of the claims from the complaints filed by SCC, TheraTrue, Yellowhammer, and other disappointed applicants and ordered that those claims be adjudicated together in a new civil action ("the severed case").[4] SCC, TheraTrue, and

---

[3]This court later determined that the consolidation orders entered in the master case were void. See Ex parte Alabama Med. Cannabis Comm'n, [Ms. CL-2024-0073, June 21, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024). Hence, the cases commenced by SCC, TheraTrue, and Yellowhammer were never validly consolidated with the master case or with each other.

[4]The circuit court entered the severance order in the master case, which was void, see note 3, supra, but the severance was effective under Rule 21, Ala. R. Civ. P., because the clerk of the circuit court assigned the claims a new civil-action case number, i.e., CV-24-0058, SCC, TheraTrue, and Yellowhammer paid a new filing fee, and SCC, TheraTrue, and Yellowhammer filed new complaints in the new civil action relating only to the severed claims. See Opinion of the Clerk, Supreme Ct. of Alabama,

Yellowhammer subsequently amended their complaints to add the commissioners as defendants. In their complaints, as last amended, SCC, TheraTrue, and Yellowhammer petitioned the circuit court, pursuant to Ala. Code 1975, § 41-22-20(a), a part of the Alabama Administrative Procedure Act ("the AAPA"), Ala. Code 1975, § 41-22-1 et seq., to review the August 10, 2023, and October 26, 2023, decisions of the AMCC rescinding or revoking their medical-cannabis-license awards. They also asserted claims for declaratory relief arising out of those decisions and the validity of the rules allowing the AMCC to stay license awards.[5]

On March 11, 2024, the AMCC moved to dismiss the severed case, and, on March 18, 2024, SCC, TheraTrue, and Yellowhammer filed a motion for a summary judgment. After receiving responses to the motions and replies to those responses and obtaining a joint stipulation

526 So. 2d 584, 586 (Ala. 1988) (explaining how a "true" severance is accomplished).

[5]TheraTrue also filed a petition for the writ of mandamus in the circuit court to compel the commissioners to issue the integrated-facility license that had been awarded to it on August 10, 2023, but TheraTrue has not argued that the circuit court erred in entering the summary judgment, discussed, infra, in favor of the commissioners on that claim, so we affirm the summary judgment on that claim.

of facts, the circuit court heard arguments on the motions and determined that the AMCC's motion to dismiss should be converted into a motion for a summary judgment. On April 29, 2024, the circuit court entered a final judgment granting the AMCC's motion for a summary judgment; the circuit court also entered a summary judgment in favor of the commissioners. The SCC, TheraTrue, and Yellowhammer timely appealed.

## Issues

The issue before this court, broadly speaking, is whether the circuit court erred in entering a summary judgment for the AMCC and the commissioners. To make that determination, we must address whether, under the circumstances as they existed at the time, the AMCC had the authority to rescind the licenses that it had awarded. Before reaching that question, however, we must first consider whether SCC, TheraTrue, and Yellowhammer properly invoked the jurisdiction of the circuit court.

## I. Jurisdiction

### A. The August 10, 2023, Rescission Order

In their complaints, SCC, TheraTrue, and Yellowhammer each included a petition for judicial review of the AMCC's August 10, 2023,

8

decision to rescind the June 12, 2023, license awards. The record shows that, at a public meeting of the AMCC on August 10, 2023, the commissioners voted to rescind all the medical-cannabis licenses that had been awarded on June 12, 2023, due to concerns of irregularities in the scoring data that were used when reviewing the license applications. At the same meeting, within minutes of rescinding the previous awards, the commissioners voted again to award the medical-cannabis licenses. SCC, TheraTrue, and Yellowhammer were awarded the same licenses as before. The August 10, 2023, license awards were subsequently rescinded by a vote of the commissioners at a public meeting of the AMCC on October 26, 2023.

Because the licenses awarded to SCC, TheraTrue, and Yellowhammer were immediately re-awarded after being rescinded at the August 10, 2023, meeting, their appeals from the August 10, 2023, rescission order are moot. An appeal is moot if, before the appeal is taken, events occur that make the determination of the appeal unnecessary or renders it clearly impossible for the appellate court to grant effectual relief. See B.P. v. Oneonta City Bd. of Educ., 375 So. 3d 1255 (Ala. Civ. App. 2022). In this case, SCC, TheraTrue and

Yellowhammer appealed to the circuit court to set aside the August 10, 2023, rescission order so that the June 12, 2023, licenses that were awarded would be revived; however, the AMCC had already effectively placed SCC, TheraTrue, and Yellowhammer back into the same position as before the August 10, 2023, rescission order by awarding the licenses to them a second time. That action remedied any injury arising directly from the August 10, 2023, rescission order.

At the time of the appeals, the only actionable injury to SCC, TheraTrue, and Yellowhammer arose from the AMCC's October 26, 2023, decision to rescind the August 10, 2023, license awards. It was the October 26, 2023, rescission order that allowed the AMCC to ultimately deny the license applications filed by SCC, TheraTrue, and Yellowhammer, not the August 10, 2023, rescission order, which had been mooted. Thus, we conclude that the petitions for judicial review relating to the August 10, 2023, rescission order did not invoke the jurisdiction of the circuit court, and we dismiss the appeals arising from that order. See B.P., supra.

B. <u>Administrative Appeals of the October 26, 2023, Rescission Order</u>

Based on our analysis below, we conclude that (1) the administrative appeals arising out of the October 26, 2023, rescission order invoked the jurisdiction of the circuit court because a petition for judicial review naming only the AMCC as a respondent does not violate the doctrine of sovereign immunity and (2) the administrative appeals were timely filed.

1. <u>Sovereign Immunity</u>

Article I, § 14, of the Alabama Constitution of 2022, provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity"; however, § 14 does not bar an action against a state agency for judicial review under § 41-22-20. See <u>Verano Alabama, LLC v. Alabama Med. Cannabis Comm'n</u>, [Ms. CL-2023-0831, Apr. 19, 2024] ___ So. 3d ___ n.7 (Ala. Civ. App. 2024). Section 41-22-20(h) provides, in pertinent part, that "[t]he petition for review shall name the agency as respondent." In <u>Verano</u>, supra, this court held that that provision does not violate the doctrine of sovereign immunity because § 14 "does not preclude actions in which the state is not a defendant, no state money or property is at stake, and the action seeks judicial examination of the

11

actions of a state agency. See State v. Bibby, 47 Ala. App. 240, 243, 252 So. 2d 662, 664 (Crim. 1971)." ___ So. 3d at ___ n.7. This court explained that, in a petition for judicial review of an agency's decision, i.e., an administrative appeal, a "respondent" is "'[t]he party against whom an appeal is taken.'" Id. (quoting Black's Law Dictionary 1569 (11th ed. 2019)).

> "As the respondent, the state agency is responsible for transmitting the administrative record to be reviewed. See Ala. Code 1975, § 41-22-20(g). The action does not seek to impose civil liability upon the state. The action seeks only judicial review of the record transmitted by the respondent agency to determine whether the agency action was validly rendered and whether it should be affirmed, modified, or reversed, any equitable and legal relief being only incidental to the determination of the review. See Ala. Code 1975, § 41-22-20(k)."

Id. Citing an analogous case, see Alabama Dep't of Pub. Safety v. Alston, 39 So. 3d 1176, 1178 (Ala. Civ. App. 2009) ("In the present case, Alston's appeal is not a lawsuit but, rather, is an administrative appeal. Therefore, the trial court had jurisdiction pursuant to § 32-5A-195(q)[, Ala. Code 1975,] to review the Department[ of Public Safety's] administrative ruling, and the doctrine of sovereign immunity does not bar Alston's appeal."), this court concluded that § 14 did not bar Verano,

LLC, from filing a petition for judicial review under § 41-22-20 against the AMCC.

The AMCC and the commissioners argue that this court incorrectly decided Verano. One month before we released Verano, this court considered in Redbud Remedies, LLC v. Alabama Medical Cannabis Commission, [Ms. CL-2023-0352, Mar. 29, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024), whether a declaratory-judgment action commenced under Ala. Code 1975, § 41-22-10, could be maintained solely against the AMCC. Section 41-22-10 provides, in pertinent part: "The agency shall be made a party to the action." This court determined that the legislature could not waive sovereign immunity, so, we said, the clause requiring that the AMCC be made a party to a declaratory-judgment action was ineffective. The AMCC and the commissioners contend that Verano conflicts with Redbud because, they say, Verano allows the legislature to waive sovereign immunity so that a state agency may be made a defendant in an administrative appeal before the circuit court.

Unlike § 41-22-10, which purports to authorize a civil action against a state agency for declaratory and injunctive relief, § 41-22-20 confers upon circuit courts appellate jurisdiction over administrative appeals. In

Secretary of Alabama Law Enforcement Agency v. Ellis, 281 So. 3d 439, 443 (Ala. Civ. App. 2019), this court recognized that, when hearing an administrative appeal, a circuit court sits as a court of review with special statutory and limited appellate jurisdiction. In L.C. v. Shelby County Department of Human Resources, supra, this court relied on Ellis in deciding that the AAPA vests in the circuit courts statutory appellate jurisdiction over the decisions of certain administrative agencies. In exercising its appellate jurisdiction pursuant to § 41-22-20, a circuit court does not adjudicate the rights and liabilities of a state agency as a "defendant," meaning "[a] person sued in a civil proceeding ...." Black's Law Dictionary 528 (11th ed. 2019). Instead, the circuit court mainly reviews the record supplied by the state agency, as the "respondent," to determine whether its decision should be upheld, modified, or reversed. See § 41-22-20(k), Ala. Code 1975.

In the context of an administrative appeal under the AAPA, the terms "defendant" and "respondent" are not synonymous terms. Although our supreme court has consistently held that a circuit court lacks jurisdiction over a civil action in which a state agency has been named as the lone defendant, see, e.g., Ex parte Alabama Dep't of

14

Transp., 978 So. 2d 17 (Ala. 2007), our supreme court has never held that a circuit court lacks jurisdiction over a petition for judicial review naming only a state agency as the respondent. To the contrary, our supreme court has held that a petition for judicial review invokes the jurisdiction of the circuit court only if the state agency is named as the respondent as required by § 41-22-20(h). See Ex parte Sutley, 86 So. 3d 997, 1000 (Ala. 2011); see also Ingram v. Alabama Peace Officers' Standards & Training Comm'n, 148 So. 3d 1089, 1093 (Ala. Civ. App. 2014). The supreme court evidently shares our opinion, which we expressed in Verano, that the doctrine of sovereign immunity does not prohibit administrative appeals naming a state agency as the lone respondent.

In some circumstances in an appeal from an administrative proceeding, a circuit court may grant legal or equitable relief to remedy an error committed by the state agency. See Ex parte Alabama Dep't of Mental Health, 207 So. 3d 743, 755 (Ala. Civ. App. 2016). Section 41-22-20(k) provides, in pertinent part:

> "The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced ...."

15

Section 41-22-20(k) authorizes a circuit court to grant "appropriate" equitable and legal relief to a person or entity aggrieved by the decision of an administrative agency when an administrative agency commits prejudicial errors, but that provision has never been construed to allow a reviewing court to impose liability upon the state that would affect its financial or other property interests in violation of § 14.

In the original complaints, SCC, TheraTrue, and Yellowhammer did not request any relief that would not be "appropriate" under § 14. They requested that the circuit court review the AMCC's October 26, 2023, decision to rescind the licenses that had been awarded to them to determine whether that decision should be set aside because it was "[i]n excess of the statutory authority of the agency," "[i]n violation of any pertinent agency rule," "[m]ade upon unlawful procedure," "[a]ffected by other error of law," or "[u]nreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion." See § 41-22-20(k)(2), (3), (4), (5), and (7). As part of its statutory mandate, if the circuit court had decided not to affirm the AMCC's decision, it would have been required to "set out in writing ... the reasons for its decision," § 41-22-20(l), Ala. Code 1975, but requiring a

16

written opinion does not transform an administrative appeal into an unlawful action for a declaratory judgment.

As we indicated in Verano, § 41-22-20(k) does not make a state agency a "defendant in a court of law or equity" and impermissibly waive sovereign immunity. Accordingly, we conclude that the petitions for judicial review filed by SCC, TheraTrue, and Yellowhammer arising out of the October 26, 2023, rescission order were not barred by the doctrine of sovereign immunity.

## 2. Timeliness of the Administrative Appeals

The parties agree that the October 26, 2023, rescission order was not a final decision. Section 41-22-20(a) authorizes appeals from a nonfinal agency decision in some circumstances. See Ex parte Alabama Dep't of Mental Health, 207 So. 3d 743, 748 (Ala. Civ. App. 2016). As a preliminary step in perfecting the appeal of a nonfinal order, an aggrieved party must file a timely notice of appeal from the specific agency action that is being challenged. Although § 41-22-20(a) does not specify the time for filing a notice of appeal of a nonfinal agency action, see Stenstrom v. State, Child Support Enf't Div., 280 Mont. 321, 328, 930 P.2d 650, 655 (1996) (noticing the absence of procedural guidelines

regulating appeals of nonfinal administrative orders in similar statute); cf. Hardy Auto., LLC v. JPMorgan Chase Bank, N.A., [Ms. SC-2023-0642, Mar. 1, 2024] ___ So. 3d ___, ___ (Ala. 2024) (Parker, C.J., dissenting) (arguing that § 41-22-20(d) provides that a notice of appeal of a nonfinal decision must be filed within 30 days of the decision), in cases involving the AMCC, Ala. Code 1975, § 20-2A-57(f), provides: "Any person aggrieved by an action of [the AMCC] under this article, within 30 days after receiving notice of the action, may appeal the action to the circuit court in the county where the [AMCC] ... is located." Reading the provisions of § 41-22-20(d) and § 20-2A-57(f) in pari materia, see Black Bear Sols., Inc. v. State Dep't of Educ., 330 So. 3d 840, 847 (Ala. Civ. App. 2021), we hold that a person or entity aggrieved by a nonfinal decision of the AMCC must file a notice of appeal within 30 days after receiving notice of the decision.

SCC, TheraTrue, and Yellowhammer argue that the appeal period never commenced because the AMCC did not deliver to them a written notice of the October 26, 2023, decision that, they say, was required by § 20-2A-57(d), which provides:

"Any party aggrieved by an action of the [AMCC] suspending, revoking, restricting, or refusing to renew a license, or

18

> imposing a fine, shall be given a hearing before the [AMCC] upon request. A request for a hearing must be made to the [AMCC] in writing within 21 days after service of notice of the action of the [AMCC]. Notice of the action of the [AMCC] must be served either by personal delivery or by certified mail, postage prepaid, to the aggrieved on the business day following the date of the mailing."

The AMCC contends that § 20-2A-57(d) does not apply to an order of rescission. Irrespective of whether § 20-2A-57(d) applies, Ala. Code 1975, § 41-22-16(d), provides, in pertinent part, that "[p]arties shall be notified either personally or by certified mail return receipt requested of any order [of an administrative agency]," which would include an order of rescission.[6] In either case, the AMCC would have had to deliver written notice of its decision to rescind the August 10, 2023, license awards personally or by certified mail.

The AMCC asserted that it notified SCC, TheraTrue, and Yellowhammer of the August 10, 2023, rescission order in writing. SCC and Yellowhammer filed affidavits from its officers denying that it had

---

[6]Section 41-22-16(d) further provides that a statute may allow for delivery by first-class mail in some circumstances, see Harrison v. State Dep't of Indus. Rels., 42 So. 3d 132, 135 (Ala. Civ. App. 2010,) but the Act does not authorize delivery of any orders of the AMCC by first-class mail. No provision of the Act or the AAPA allows notice of a nonfinal decision to be delivered by e-mail.

received any written notice. The only notice contained in the record is an e-mail to Yellowhammer's contact person dated October 31, 2023, notifying Yellowhammer of the rescission of its August 10, 2023, dispensary-license award. That notice was not valid because it was not delivered personally or by certified mail as required by § 41-22-16(d). See Ala. Code 1975, § 41-22-2(a) ("This chapter is intended to provide a minimum procedural code for the operation of all state agencies when they take action affecting the rights and duties of the public."); John Kuhni & Sons Inc. v. Labor Comm'n, Occupational Safety & Health Div., 414 P.3d 952, 958 (Utah Ct. App. 2018) (holding that delivery of a notice other than by the manner set forth in Utah's administrative procedure act is invalid even if actual notice has been provided).

In Do v. Arizona Board of Regents, 256 Ariz. 370, 539 P.3d 131, 134 (Ct. App. 2023), the Arizona Court of Appeals considered an essentially identical scenario. A nursing student appealed a failing grade. The hearing officer denied her appeal by e-mail, in violation of an administrative-procedure statute requiring a final decision to be served personally or by certified mail. By Arizona law, the nursing student had a right to appeal to a court for judicial review within 35 days of service of

the final decision.  The nursing student filed her notice of appeal over nine months after receiving the e-mail, arguing that the time to appeal had never started running because she had never been properly served with the final decision.  The Arizona Court of Appeals agreed, holding that "personal delivery" means "handing the decision to the recipient," 256 Ariz. at 370, 539 P.3d at 134, and "certified mail" refers to "a service provided by the United States Postal Service where the sender is given a receipt of the mailing and a subsequent verification after the article is delivered."  Id.  Even though the nursing student had received actual notice of the final decision through the e-mail, because an e-mail did not strictly meet the service requirements of the statute, the court concluded that the appeal period had not been triggered and, therefore, the employee had timely filed her notice of appeal.

Based on the reasoning in Do, we conclude that the period for filing a notice of appeal of the October 26, 2023, decision never commenced. Because a petition for judicial review served on an agency within the appeal period perfects an appeal, see Eley v. Medical Licensure Comm'n of Alabama, 904 So. 2d 269 (Ala. Civ. App. 2003), we conclude that SCC, TheraTrue, and Yellowhammer properly filed their notices of appeal of

the October 26, 2023, decision by serving the AMCC with their petitions for judicial review before the appeal period commenced.

### C. The Declaratory-Judgment Actions

The original complaints filed by SCC, TheraTrue, and Yellowhammer sought declaratory relief solely against the AMCC for allegedly rescinding the licenses that had been awarded to them without statutory authority and for staying the licenses before rescinding them based on allegedly invalid rules. Those claims were barred by the doctrine of sovereign immunity. In Redbud, supra, we held that a complaint for declaratory relief filed solely against the AMCC, an immune state agency, did not invoke the jurisdiction of the circuit court. We further held that the complaint could not be amended to name the commissioners as defendants because it was a legal nullity ab initio that could only be dismissed.

In this case, the original complaints were not legal nullities. Each complaint contained a valid petition for judicial review of the October 26, 2023, rescission order. A petition for judicial review may be amended to add parties and to state separate claims against those parties. See Covin v. Alabama Bd. of Exam'rs in Counseling, 712 So. 2d 1103, 1105-06 (Ala.

22

Civ. App. 1998) (noting that the Alabama Rules of Civil Procedure apply to administrative appeals and that a complaint can be amended, under Rule 20(a), Ala. R. Civ. P., to join other parties as to which appellants asserted a right to relief growing out of the same occurrence with common questions of law). Thus, SCC, TheraTrue, and Yellowhammer could amend their original complaints to add the commissioners as defendants because the doctrine of sovereign immunity does not bar an action against an official of a state agency for declaratory relief. See Ex parte Hampton, 189 So. 3d 14, 17 (Ala. 2015).

After the circuit court severed the cases, SCC, TheraTrue, and Yellowhammer filed complaints naming the commissioners as defendants and asserting claims for declaratory relief against them. Those amended complaints stated valid claims for declaratory relief against the commissioners, even though they did not state valid claims against the AMCC. Thus, the claims against the commissioners were properly before the circuit court.

## D. Exhaustion of Administrative Remedies

The AMCC asserts that the circuit court lacked subject-matter jurisdiction over the claims asserted by SCC, TheraTrue, and

23

Yellowhammer because, it says, they did not exhaust their administrative remedies. Generally, "exhaustion of administrative remedies is a judicially imposed prudential limitation, not an issue of subject-matter jurisdiction." Budget Inn of Daphne, Inc. v. City of Daphne, 789 So. 2d 154, 157 (Ala. 2000).

> "[The doctrine of exhaustion of administrative remedies] 'requires that where a controversy is to be initially determined by an administrative body, the courts will decline relief until those remedies have been explored and, in most instances, exhausted.' Fraternal Order of Police, Strawberry Lodge v. Entrekin, 294 Ala. 201, 209, 314 So. 2d 663, 670 (1975). Entrekin approved the 'exhaustion of administrative remedies' doctrine found in United States v. Western Pacific Railroad Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), which applies 'where a claim is cognizable in the first instance by an administrative agency alone.'"

City of Huntsville v. Smartt, 409 So. 2d 1353, 1357 (Ala. 1982).

Exhaustion of administrative remedies is not a prerequisite to obtaining declaratory relief regarding the validity of an administrative rule, Alabama Cellular Serv., Inc. v. Sizemore, 565 So. 2d 199, 200 (Ala. 1990), or the authority of an administrative agency to take an action. See Jefferson Cnty. v. Johnson, 333 So. 2d 143, 149 (Ala. 1976). Thus, SCC, TheraTrue, and Yellowhammer were not barred by the doctrine of exhaustion of administrative remedies from asserting their claims for

24

declaratory relief against the commissioners, which sought determinations as to the validity of the stay rules adopted by the AMCC and the authority of the AMCC to rescind the license awards.

As an exception to the general rule requiring exhaustion of administrative remedies, "[a] preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy." § 41-22-20(a). In their petitions for judicial review, SCC, TheraTrue, and Yellowhammer requested that the circuit court set aside the October 26, 2023, rescission order. As we indicated in Verano, ___ So. 3d at ___ n.5, the AMCC's decision to rescind the licenses was not a final decision, meaning it could be immediately reviewed by the circuit court without exhaustion of administrative remedies "if review of the final agency decision would not provide an adequate remedy." § 41-22-20(a); see also Alabama Dep't of Econ. & Cmty. Affs. v. Community Serv. Programs of W. Alabama, Inc., 65 So. 3d 396, 403 (Ala. Civ. App. 2010).

The AMCC argues that the Act affords an adequate remedy through a public-investigative hearing. The Act provides that, if a license application is denied, the AMCC, "upon request, shall provide a public

25

investigative hearing at which the applicant is given the opportunity to present testimony and evidence to establish its suitability for a license." Ala. Code 1975, § 20-2A-56(e). That procedure only allows an unsuccessful applicant to prove its suitability for a license; nothing in the language of § 20-2A-56(e) suggests that, in a public-investigative hearing, the AMCC could reconsider or correct its October 26, 2023, decision to rescind the licenses that were awarded. The public-investigative hearing provides no remedy for deciding that legal issue.

Judicial review after the public-investigatory hearing also would not be an adequate remedy. Presumably, the circuit court could consider the interlocutory October 26, 2023, decision in an appeal from the final decision, and "the necessity of trying a case to conclusion before obtaining redress on appeal from an erroneous interlocutory ruling of the [administrative agency] does not make the remedy inadequate." Florida Leisure Acquisition Corp. v. Florida Comm'n on Hum. Rels., 639 So. 2d 1028, 1029 (Fla. Dist. Ct. App. 1994). But, in this case, SCC, TheraTrue, and Yellowhammer could be irreparably harmed by a delay in judicial review. Presently, the five integrated-facility licenses have been

awarded, but not issued;[7] however, by the time the circuit court obtains jurisdiction to review a final decision, it is possible that no integrated-facility licenses will be available.[8] The remedy of judicial review following a final decision would be inadequate if there is "some suggestion that the administrative ruling, if incorrect, could not be remedied so as to cause irreparable harm." Schlachter v. Georgia State Bd. of Exam'rs of Psychs., 215 Ga. App. 171, 171, 450 S.E.2d 242, 244 (1994).

_____

[7]A "license issued" is defined in the AMCC's regulations as follows: "The [AMCC's] delivery of a license to a particular Applicant, after the license fee has been paid and all obstacles to the Applicant's assuming the role of a Licensee have been removed. An Applicant becomes a Licensee upon receipt of the [AMCC's] issuance of the license." Ala. Admin. Code (AMCC), r. 538-X-3-.02(12).

[8]Based on the procedural posture of this case, we do not definitively decide whether the circuit court can, in a judicial-review proceeding under § 41-22-20, reallocate medical-cannabis licenses. Compare Nilo, Inc. v. Pennsylvania Liquor Control Bd., 580 Pa. 336, 861 A.2d 248 (2004) (equally divided Pennsylvania supreme court affirmed judgment of lower appellate court reallocating liquor license to disappointed applicant by rescinding award made to competing applicant) with Applicants for Retail Package Liquor Licenses in Floyd Cnty. v. Gulley, 674 S.W.2d 22, 25 (Ky. Ct. App. 1984) (holding that, when multiple applicants seek the same license, an appeal of the denial of the application would be an exercise in futility because the appellate court could not award the license to the disappointed applicant).

For the foregoing reasons, we conclude that the doctrine of exhaustion of administrative remedies did not prevent the circuit court from obtaining jurisdiction over the claims arising out of the AMCC's October 26, 2023, decision to rescind the integrated-facility license awards.

## II. Rescission of the Awarded Licenses

### A. Rescission vs. Revocation

Turning to the merits, we first address the dispute between the parties as to whether the October 26, 2023, order was one of rescission or of revocation. The revocation of a license "vastly" differs from the rescission of a decision to award a license. See Andruzewski v. Smith, 105 R.I. 463, 468, 252 A.2d 914, 917 (1969). "The revocation of a license takes effect from the date of revocation, and is manifestly a very different act from the attempted rescission of a former vote granting a license, in that the latter act, if effectual, would avoid the license altogether ...." Dziok v. Board of License Comm'rs of Cent. Falls, 28 R.I. 526, 68 A. 479, 479 (1908).

The Act empowers the AMCC to revoke a license for one of the causes enumerated in § 20-2A-57(a),[9] but the AMCC did not exercise its statutory power of revocation during the August 10, 2023, public meeting. The parties stipulated that at the public meeting held on August 10, 2023, the commissioners voted to award medical-cannabis licenses to various applicants. At the October 26, 2023, meeting, the commissioners voted to rescind the previous licenses awarded[10] on August 10, 2023, so that it could restart the licensing process using revised procedures. In other words, the commissioners voted to "avoid"

---

[9]Section 20-2A-57(a), Ala. Code 1975, provides:

"If any of the following occurs, the [AMCC] may deny, suspend, revoke, or restrict a license:

"(1) An applicant or licensee fails to comply with this article or rules.

"(2) A licensee no longer meets the eligibility requirements for a license under this article.

"(3) An applicant or licensee fails to provide information the [AMCC] requests to assist in any investigation, inquiry, or commission hearing."

[10]A "license awarded" is "[the AMCC's] decision to grant a license to a particular Applicant, after which the Applicant has an obligation to pay the license fee." Ala. Admin. Code (AMCC), r. 538-X-3-.02(11).

the August 10, 2023, license awards "altogether" by rescinding those awards and starting over as if they had never existed. See Verano, ___ So. 3d at ___ n.6 ("In parliamentary law, the term 'rescind' means '[t]o void, repeal, or nullify a main motion adopted earlier.' Black's Law Dictionary 1562 (11th ed. 2019).") (emphasis omitted).

Based on the undisputed facts, we conclude that the AMCC rescinded the August 10, 2023, license awards; it did not revoke them. As such, we do not discuss whether the AMCC had legitimate grounds for revoking the licenses or whether it used the proper procedure for revocation.

## B. Rescission Power

Having determined that the AMCC rescinded the August 10, 2023, license awards, the question is whether, in the absence of any express authority contained in the Act, the AMCC had the power of rescission. We conclude that the AMCC possessed inherent authority to rescind the August 10, 2023, license awards.

The undisputed evidence shows that, after emerging from an executive session during a public meeting on August 10, 2023, the commissioners voted to award the available medical-cannabis licenses to

various applicants, including SCC and TheraTrue, who were awarded two of the five allotted integrated-facility licenses, and Yellowhammer, who was awarded a dispensary license. Following the awards, several disappointed applicants commenced civil actions against the AMCC in the circuit court, claiming that the AMCC had violated the AAPA and the Alabama Open Meetings Act ("OMA"), Ala. Code 1975, § 36-25A-1 et seq., when making the August 10, 2023, license awards. On August 21, 2023, the circuit court, which presided over the lawsuits, entered the TRO purporting to prevent the AMCC from acting "in furtherance of the issuance of the medical cannabis licenses that it awarded on August 10, 2023." SCC and TheraTrue intervened in the litigation to prevent the rescission of the August 10, 2023, license awards. Although the AMCC denied that it had violated the AAPA or the OMA, the AMCC, in response to the litigation, signaled that it was considering rescinding the August 10, 2023, license awards and restarting the licensing process using different procedures.

On August 31, 2023, the AMCC imposed an administrative stay of the licensing process. On October 12, 2023, the AMCC adopted an "emergency rule" to change the licensing process going forward. On

October 25, 2023, the circuit court modified the TRO to allow the AMCC to conduct a public meeting on October 26, 2023, for the purposes of lifting its administrative stay, rescinding the August 10, 2023, license awards, and allowing the medical-cannabis license applicants to present their applications in a public meeting pursuant to the emergency rule. On October 26, 2023, the AMCC convened the public meeting, and the commissioners voted to lift the administrative stay and to rescind the August 10, 2023, license awards. [11]

The foregoing undisputed evidence establishes that the August 10, 2023, license awards were rescinded out of concern that, when approving those awards, the AMCC and the commissioners had used unlawful procedures that had violated the AAPA and the OMA. In Ellard v. State, 474 So. 2d 743 (Ala. Crim. App. 1984), the Alabama Board of Pardons and Paroles ("the parole board") revoked a certificate of parole that it had issued to a prisoner using unlawful procedures. Among other errors, the parole board had failed to review a complete investigative file of the

---

[11]The transcript of the October 26, 2023, public meeting shows that the chairman of the AMCC called for a motion "to rescind all license awards and denial decisions of August the 10th, 2023." A motion was made and seconded; a majority of the commissioners then voted to approve the motion.

prisoner's social and criminal record before granting him parole. After protests, newspaper articles, and the State attorney general bringing the error to the attention of the parole board's legal counsel, the parole board, realizing its error and recognizing that the error rendered its decision null and void, voted to revoke the certificate of parole. Upon the prisoner's appeal of a circuit court's judgment approving the revocation, the Alabama Court of Criminal Appeals held that the parole board had the inherent power to correct its own error, stating, in pertinent part:

"The courts hold or recognize that administrative agencies may reconsider and modify their determinations or correct errors on the grounds of fraud and imposition, illegality, irregularity in vital matters, mistake, misconception of facts, erroneous conclusion of law, surprise, or inadvertence. Geiger v. Mississippi State Board of Cosmetology, 246 Miss. 542, 151 So. 2d 189 (1963); 2 Am. Jur. 2d, Administrative Law, § 524 (1962). Any deliberative body, administrative, judicial or legislative, has the inherent power to reconsider an action taken by it unless the action is such that it cannot be set aside or unless reconsideration is precluded by law. In re Fain, 65 Cal. App. 3d 376, 135 Cal. Rptr. 543 (1976). The power of administrative reconsideration is consistent with the principle that 'notions' of administrative autonomy require that the agency be given a chance to discover and correct its own errors. In re Fain, supra; McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969)."

474 So. 2d at 752-53. The supreme court affirmed that decision, holding:

"If [the parole board] determines that it made a mistake in carrying out

its duties, it is not powerless to rescind its actions, provided, of course, the prisoner is accorded his due process rights." Ex parte Ellard, 474 So. 2d 758, 763 (Ala. 1985).

In this case, the AMCC and the commissioners disputed that they had committed any violations of the AAPA or the OMA; however, in awarding the disappointed applicants a TRO, the circuit court impliedly indicated that there was a reasonable chance that the disappointed applicants could prove that the violations had occurred. See Lott v. Eastern Shore Christian Ctr., 908 So. 2d 922, 927 (Ala. 2005) (cataloguing the factors that must be shown to obtain a temporary restraining order, which include a showing of "a reasonable chance of success on the ultimate merits of the case" (emphasis omitted)). Realizing that the August 10, 2023, license awards could be invalidated, see Ala. Code 1975, § 36-25A-9(f) ("The court may invalidate the action or actions taken during a meeting held in violation of [the OMA] ...."); § 41-22-20(k)(4) (authorizing a circuit court to set aside an agency action "[m]ade upon unlawful procedure"), the commissioners decided to rescind the August 10, 2023, awards and to reconsider the license applications based on the procedures established in the emergency rule.

34

This case differs from Ex parte Ellard because, in that case, the public and the State attorney general challenged the parole board's decision, and the parole board admitted that it had acted illegally in granting the certificate of parole, which, by operation of law, rendered the parole board's decision null and void. In this case, the disappointed applicants challenged the AMCC's licensing procedures, the AMCC has not conceded that it committed any error, and its October 26, 2023, rescission order is not invalid by operation of law. Those distinctions do not yield a different result. An administrative agency should not be compelled to concede the illegality of an administrative action to exercise its inherent authority to rescind that action. Under the reasoning of Ex parte Ellard, an administrative agency should be allowed to act promptly to rescind an action that is attacked as being unlawful so long as the power to reconsider the action remains with the agency.

In Ex parte Baldwin County Commission, 526 So. 2d 564, 566 (Ala. 1988), our supreme court "acknowledg[ed] the general inherent power to reconsider" vested in administrative agencies to correct errors in

performing their quasi-judicial functions.[12]  Based on <u>Ex parte Baldwin County Commission</u>, one scholar has commented that Alabama has adopted the majority rule that, "in the absence of statutory authority, administrative agencies still possess the power to reconsider."  Daniel Bress, <u>Administrative Reconsideration</u>, 91 Va. L. Rev. 1737, 1769 (2005). Under this majority rule, an administrative agency can rescind an administrative action or decision to correct ministerial errors, but the administrative agency cannot rescind an administrative action based on a change in policy, when an unreasonable amount of time has lapsed, or if a party has relied on the original adjudication.  <u>Id.</u> at 1771-72.  In <u>Ex parte Baldwin County Commission</u>, our supreme court further held that a statute may deprive an administrative agency of inherent authority when it establishes that a particular action or decision of the agency is "final" and not subject to reconsideration or rehearing.  <u>See also</u> <u>Doggett v. Alabama Sec. Comm'n</u>, 511 So. 2d 204, 206 (Ala. Civ. App. 1987) ("[T]he

---

[12]This holding contradicts our statement in <u>Doggett v. Alabama Securities Commission</u>, 511 So. 2d 204, 206 (Ala. Civ. App. 1987), that, "[a]s a general proposition, an administrative body has no power to set aside or modify an earlier order unless expressly provided by statute," 511 So. 2d at 206, which was supported only by a citation to Minnesota law.  <u>See</u> <u>Anchor Cas. Co. v. Bongards Co-Operative Creamery Ass'n</u>, 253 Minn. 101, 91 N.W.2d 122 (1958).

power to revoke or rescind a previous order applies only to orders which have yet to become final.").

In this case, the Act does not establish that a license award is "final" and not subject to reconsideration. Section 20-2A-68, Ala. Code 1975, states that "[g]ranting a license does not create or vest any right, title, franchise, or other property interest" but that "[a] license issued under [Article 2A of Chapter 20] is a revocable privilege granted by this state and is not a property right." In its regulations, the AMCC has distinguished between a "license awarded," which does not vest the awardee with a license, and a "license issued," which is the final action that transforms an awardee into a licensee. See notes 7 and 10, supra. This court is bound by our supreme court's precedents requiring deference to that interpretation. See Ex parte State Dep't of Revenue, 683 So. 2d 980, 983 (Ala. 1996) ("[A] court accepts an administrative interpretation of the statute by the agency charged with its administration, if the interpretation is reasonable."). On August 10, 2023, the commissioners voted only to award the licenses, they had not issued the licenses, and, according to the AMCC's rule, until the licenses were issued, the awards remained within the jurisdiction of the AMCC,

37

subject to the inherent authority of the AMCC to rescind the awards. See Doggett, supra (holding that, until the decision of Alabama Securities Commission became final, it was subject to rescission).

SCC, TheraTrue, and Yellowhammer have not submitted any evidence indicating that they acted in reliance on the license awards. Given the nature of the awards and the absence of the issuance of the licenses, they could not have reasonably relied on the awards to commence medical-cannabis operations. SCC, TheraTrue, and Yellowhammer argue that the AMCC had a ministerial duty to issue the licenses within 14 days of the awards. See Ala. Admin. Code (AMCC), r. 528-X-3-.17. However, that rule provides, in pertinent part:

> "Unless the [AMCC] or other court of competent jurisdiction enters a stay against the issuance of some or all licenses, licenses shall issue to all Applicants who have been awarded licenses upon processing of the appropriate license fees, not later than 14 days after the deadline for payment of the appropriate fee ...."

Id. (emphasis added). It is undisputed that, on August 21, 2023, the circuit court entered the TRO staying the issuance of the licenses and that, on August 31, 2023, the AMCC entered an administrative stay to that same effect. This court eventually determined, ex mero motu, that the orders entered by the circuit court in the master case, which include

38

the TRO, were void, <u>see</u> <u>Ex parte Alabama Med. Cannabis Comm'n</u>, supra, but the AMCC was bound to follow the circuit court's injunction until the TRO was properly set aside. <u>See</u> <u>Ex parte Purvis</u>, 382 So. 2d 512, 514 (Ala. 1980) ("It has long been the rule of law that an order issued by a court with jurisdiction over the subject matter must be obeyed by the parties subject to the order until it is reversed by orderly and proper proceedings even though the order may be constitutionally defective or invalid."). The AMCC could not issue the licenses that had been awarded in violation of the TRO. When the circuit court modified the TRO on October 25, 2023, it did not authorize the AMCC to issue the licenses that had been awarded on August 10, 2023; it authorized the AMCC to rescind those awards, which the AMCC did promptly on October 26, 2023.

Alabama law recognizes that an administrative agency has a limited inherent power to rescind a nonfinal administrative order to avoid a procedural legal error. The AMCC properly exercised that limited power when it rescinded the August 10, 2023, license awards.[13] Therefore, the circuit court correctly entered a summary judgment in

---

[13]For that reason, we do not address whether the AMCC had the implied or procedural authority to rescind the August 10, 2023, license awards.

favor of the AMCC on the petitions for judicial review and in favor of the commissioners on the claims for declaratory relief.

### III. Stay Rules

Lastly, we address the claim that the AMCC did not validly adopt the rules allowing it to stay a license award, Ala. Admin. Code (AMCC), r. 538-X-3-.17 and r. 538-X-3-.18(j). Rule 538-X-3-.17, quoted above, merely references the power of the AMCC to stay a license award. Rule 538-X-3-.18(j) provides, in pertinent part:

> "Despite the [AMCC]'s announcement of the award of licenses, due to the pendency of hearings or appeals on some or all licenses in a particular offering, some or all licenses may not issue, in the discretion of the [AMCC], but may be stayed until the time for appeal has lapsed or all appeals from the [AMCC]'s decision have resolved, whichever is later."

SCC, TheraTrue, and Yellowhammer challenged this stay provision as exceeding the AMCC's rulemaking authority under the Act.

> Section 41-22-10 provides, in pertinent part:

> "The validity or applicability of a rule may be determined in an action for a declaratory judgment or its enforcement stayed by injunctive relief in the circuit court of Montgomery County, unless otherwise specifically provided by statute, if the court finds that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff."

40

In this case, the application of the rule did not impair the legal rights or privileges of SCC, TheraTrue, and Yellowhammer and the rule did not threaten to impair their legal rights or privileges at the time of the entry of the summary judgment.

After SCC, TheraTrue, and Yellowhammer were awarded licenses on August 10, 2023, the AMCC imposed an administrative stay to prevent the issuance of those licenses on August 31, 2023; however, by that time, the circuit court had already entered the TRO preventing the issuance of the licenses. SCC attempted to have the TRO dissolved, but the record indicates that its attempt was unsuccessful. The TRO, not the administrative stay, restrained the AMCC from issuing the licenses; even if the administrative stay had not been imposed, the AMCC still could not have issued the licenses. See Ex parte Purvis, supra. Under the circumstances, we hold that the application of the rule allowing the AMCC to stay awards did not impair whatever legal rights and privileges SCC, TheraTrue, and Yellowhammer had obtained from the August 10, 2023, license awards.

After the August 10, 2023, license awards were rescinded, the commissioners voted to award the licenses to other applicants, thereby

denying the license applications filed by SCC, TheraTrue, and Yellowhammer. After that point, the license awards were stayed both by a temporary restraining order entered by the circuit court on January 3, 2024, and by an administrative order rendered by the AMCC on April 11, 2024. However, those stays did not have any negative impact on the legal rights and privileges of SCC, TheraTrue, and Yellowhammer; if anything, they aided SCC, TheraTrue, and Yellowhammer, who were no longer awardees, by staying the licenses awarded to the other applicants pending the hearings and appeals initiated by SCC, TheraTrue, and Yellowhammer to regain their license awards.

Accordingly, SCC, TheraTrue, and Yellowhammer lacked standing to obtain a declaratory judgment regarding the validity of the stay rules. See generally Health Care Auth. of Athens & Limestone Cnty. v. Statewide Health Coordinating Council, 988 So. 2d 574, 580 (Ala. Civ. App. 2008) (holding that a party must have standing under § 41-22-10 to obtain a declaratory judgment regarding the validity of an administrative rule). Therefore, we hold that the circuit court did not err in entering a summary judgment in favor of the AMCC and the commissioners on the claims asserting that the stay rules were invalid.

42

Conclusion

In conclusion, we dismiss the appeals insofar as they relate to any claims arising out of the August 10, 2023, decision to rescind the June 12, 2023, license awards. We conclude that the circuit court had jurisdiction over the claims arising out of the AMCC's October 26, 2023, decision to rescind the medical-cannabis license awards made on August 10, 2023, and we affirm the summary judgment as to those claims. We also affirm the summary judgment on the claims asserting that the stay rules were invalid.

CL-2024-0300 -- APPEAL DISMISSED IN PART AND AFFIRMED IN PART.

CL-2024-0312 -- APPEAL DISMISSED IN PART AND AFFIRMED IN PART.

All the judges concur.